[This opinion has been published in *Ohio Official Reports* at 86 Ohio St.3d 74.]

THE STATE EX REL. MAYLE, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO

ET AL., APPELLEES.

[Cite as *State ex rel. Mayle v. Indus. Comm*., 1999-Ohio-348.]

*Workers' compensation—Industrial Commission does not abuse its discretion in denying claimant's application alleging violations of specific safety requirements, when.*

(No. 97-729—Submitted June 9, 1999—Decided July 7, 1999.)

APPEAL from the Court of Appeals for Franklin County, No. 95APD09-1207.

————————————

{¶ 1} Appellee Apollon Painting Company, Inc. paints electrical towers, substations, and electrical transformers for utility companies. According to company employee Angelo Borg, to paint these towers, the "normal method of climbing one of these towers that could be from one hundred sixty (160) to two hundred (200) feet high, [was] to first use the 'ladder' that is made up of prongs on the side of the tower. You would take up a rope, and pull your paint up after you. The ladder goes up only so far[,] up to the upper 'K' section. After that, you would climb the steel structure itself."

{¶ 2} "Climbing the steel structure itself" entailed "using only [y]our hands and feet, going both up and coming down. If you were short, you would slide the steel down at some locations higher up; a taller man could just step down to the next steel."

{¶ 3} In July 1989, Apollon was hired to paint a tower near Bellefontaine, Ohio. The crew assembled at the Canton home office, gathered its equipment, and proceeded to the job site. Of the five-man crew, Delmas Ray Mayle was the most experienced, having done this work for at least twenty years. Despite his expertise, however, Delmas fell to his death from the transmission tower.

**{¶ 4}** After her workers' compensation death claim was allowed, decedent's widow, Brenda S. Mayle, appellant herein, filed for additional compensation, alleging that Apollon had violated specific safety requirements ("VSSRs") dealing with safety lines, belts, and nets. It is undisputed that these safety devices were not at the Bellefontaine job site. Appellee Industrial Commission of Ohio's VSSR investigation report indicated, however, that this equipment was available at the Canton home office:

"At Apollon, if any worker needed or just wanted a safety belt or safety line, they would have been given those items. Before we went to a site, the boss would ask us * * * what equipment we were going to need at that particular location; he would load the requested items onto our truck, so we would take whatever we needed along with us. To my knowledge, no one had asked for any type of safety belt or safety line to be used at this location, so there were none there." (Statement of Angelo Borg.)

**{¶ 5}** The report also indicated that such safety devices were generally not used. Co-worker Borg stated that "[p]eople in our work, tower painters, just cannot use safety belts and/or lifelines, because of the dangers of entanglement as we climb, and contact with the live power lines as we work or climb." He also related that he "specifically remember[ed] Ray [claimant] telling me that all I (we) needed was our hands and feet. At no time did Ray ever express to me that we should use a safety belt or lifeline."

**{¶ 6}** Foreman Michael S. Nicholas made a similar statement: "It is the industry standard that transmission tower painters do not use safety belts and/or lifelines of any kind, because these items would not save your life; and in some instances, they would actually hinder safe work practices. If you had a lifeline on your side and you were over energized wires or components, this lifeline could contact the 'power' and in effect just 'plug you into' the current. Also, any rope attached to you could become entangled and cause you to fall."

**{¶ 7}** A hearing officer denied widow-claimant's application, writing:

"It is undisputed that these painters wore no safety belts with lanyards and that no safety net was used. Further, it appears that none of these painters had ever worn a safety belt with a lanyard while doing this type of tower painting, either with this employer or with other employers. This employer did have safety belts 'available' at the Canton office, and it is probable that if a painter had asked for a safety belt and lanyard, the employer would have supplied one. However, the employer did not require the use of the safety belts and there is no persuasive proof that the decedent * * * had ever requested the use of a safety belt.

" * * *

"R.C. [*sic*, Ohio Adm.Code] 4121:1-3-01(B)(20) indicates that 'provide' means to 'make available.' * * * It is found that this employer did 'make available', and thus, 'provide' safety belts and lanyards to his [*sic*] employees. The painters usually report to the Canton office, where the safety belts were available prior to starting a new job, and in the alternative, the proof and the testimony of Mr. Nicholas establishes that the belts would have been delivered to a work site had a painter asked for one. Once again, there is no persuasive proof that the claimant or the decedent ever asked for the safety belt or that the employer refused to provide a safety belt. Instead, it is found that the painters were aware that the belts were available in the Canton office, but out of custom and because the belts were cumbersome, they chose not to wear or request them.

"As it is found that the employer did comply with [Ohio Adm.Code] 4121:1-3-03(J)(1), no violation of [Ohio Adm.Code] 4121:1-3-03(10) [*sic* (L)] is found."

**{¶ 8}** Widow-claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in denying her specific safety application. The court of appeals disagreed, and denied the writ.

**{¶ 9}** This cause is now before this court upon an appeal as of right.

_____

*Ward, Kaps, Bainbridge, Maurer & Melvin* and *William J. Melvin*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Michael A. Vanderhorst,* Assistant Attorney General, for appellee Industrial Commission.

*Harry A. Tipping Co., L.P.A., Harry A. Tipping* and *Lesley A. Weigand*, for appellee Apollon Painting Company.

_____

*Per Curiam.*

**{¶ 10}** Several key facts are unchallenged:   (1) Apollon possessed the requisite safety equipment; (2) decedent had the opportunity to obtain that equipment from the Canton home office before leaving for the Bellefontaine job site; (3) decedent, before departing for Bellefontaine, did not request any safety equipment; (4) decedent, over the course of twenty years, consistently did not use safety belts/lifelines; and (5) industry-wide, the use of such equipment was avoided as being dangerous to the safety of tower painters.

**{¶ 11}** Claimant contends that the availability of safety equipment at the Canton office was not good enough.  Despite the facts, noted above, claimant asserts that the safety equipment should have nevertheless been taken to the job site. We disagree.  Decedent had the opportunity to get whatever safety equipment he needed for this job.  He declined that invitation, and pattern and practice strongly implied that even if the equipment had been at the job site, decedent would not have used it.

**{¶ 12}** The commission did not, therefore, abuse its discretion in denying claimant's VSSR application.  Accordingly, the judgment of the court of appeals denying the writ is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, COOK and LUNDBERG STRATTON, JJ., concur.

PFEIFER, J., dissents.

_____