[This decision has been published in *Ohio Official Reports* at 91 Ohio St.3d 105.]

THE STATE EX REL. GRECO, APPELLANT, *v*. CONRAD, ADMR., ET AL.;

INDUSTRIAL COMMISSION OF OHIO, APPELLEE.

[Cite as *State ex rel. Greco v. Conrad*, 2001-Ohio-293.]

*Workers' compensation—Allegation of several specific safety violations involving safety lines, belts, and lanyards by claimant—Court of appeals' judgment that no violation of Ohio Adm.Code 4121:1-3-03(J)(1) occurred is reversed.*

(No. 99-946—Submitted November 28, 2000—Decided March 7, 2001.)

APPEAL from the Court of Appeals for Franklin County, No. 98AP-108.

————————————

*Per Curiam.*

{¶ 1} The facts in this case are scant. What is known is that appellant-claimant Anthony Greco worked for T.H.E. Roofing & Sheet Metal Company. On November 17, 1995, claimant was assigned to clean the gutters of a church. He did so "by leaning over the edge of the roof and removing the debris by hand." He was not wearing a safety belt or line.

{¶ 2} The roof pitch was approximately 3/12 to 4/12, and the distance from the top edge of the gutter to the ground was approximately twenty-four feet and eleven inches. While cleaning, claimant fell from the roof and was severely injured. There were no witnesses to the fall.

{¶ 3} Claimant alleged several specific safety violations ("VSSR") involving safety lines, belts, and lanyards. An investigation by the Industrial Commission of Ohio, appellee, revealed little. Company employees said only that due to the roof's low pitch, no safety equipment was used. Claimant averred that the company had never provided or required the use of safety belts or lines.

**{¶ 4}** The commission investigator took several pictures of the accident site and two photos at company headquarters on his visit there on January 8, 1997. The first picture showed a safety harness, belt, and lifeline and was apparently taken in the employer's storeroom. The second showed a roofer's bracket. In addition, receipts were provided showing the purchase of similar items in early 1995.

**{¶ 5}** The commission denied claimant's application, writing:

"Investigator Creager did establish a distance of 24′ 11″ from the church's roof to the ground. Since the uncontroverted evidence finds that the work place was less than 25′ above the ground, OAC 4121:1-3-03(L) likewise is inapplicable.

"Investigator Creager's measurements are uncontroverted.

"Employer's invoices * * * substantiate the recent purchase of the safety equipment mandated by OAC 4121:1-3-03(J). The photographs 1 & 2 at Exhibit # 1, moreover, depict equipment evidently soiled from usage, and at least one roof bracket showing signs of usage. This supports employer's contentions and detracts from the credibility of claimant's allegations. Employer, therefore, is held to have been in compliance with OAC 4121:1-3-03(J)."

**{¶ 6}** Reconsideration was denied.

**{¶ 7}** Claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in denying his VSSR application. The court of appeals disagreed and denied the writ.

**{¶ 8}** This cause is now before this court upon an appeal as of right.

**{¶ 9}** Ohio Adm.Code 4121:1-3-03(J)(1) and (L)(1) are the focus of our inquiry. The commission found no violations, and the court of appeals agreed. For the reasons to follow, we find a violation of Ohio Adm.Code 4121:1-3-03(J)(1).

**{¶ 10}** At the time of claimant's accident, Ohio Adm.Code 4121:1-3-03(J)(1) required:

"Lifelines, safety belts and lanyards shall be provided by the employer and it shall be the responsibility of the employee to wear such equipment when * * *

exposed to hazards of falling when the operation being performed is more than fifteen feet above ground * * *." 1979-1980 Ohio Monthly Record 4-25.

{¶ 11} Controversy centers on the word "provided," which is relevantly defined for purposes of the above rule as "to make available." Ohio Adm.Code 4121:1-3-01(B)(20). All agree that the named equipment was not at the accident/job site. "Availability" was found nevertheless based on two pictures showing soiled equipment in the employer's storeroom and the invoices for purchases of safety equipment.

{¶ 12} The equation of possession with availability is troubling. An employer can own safety equipment, but if it is locked in a remote warehouse, it is hardly "available." Possession is meaningless without an additional element – employee accessibility.

{¶ 13} Accessibility was a key element in finding availability in *State ex rel. Mayle v. Indus. Comm.* (1999), 86 Ohio St.3d 74, 711 N.E.2d 687. *Mayle* involved a fatal fall from an electric transmission tower. As here, no safety belts or other similar equipment was on site. *Mayle* nevertheless found availability based on two things: (1) equipment accessibility and (2) evidence that claimant's lack of a belt stemmed from a personal preference and an industry-wide pattern of avoiding such equipment as posing an unacceptable risk of electrocution. Regarding the former, we stressed evidence indicating that prior to every job, the crew assembled at the home office, where the employees had the chance to obtain whatever safety equipment was needed for the job. Further testimony revealed that the employer would deliver to the site any safety equipment that a worker subsequently requested.

{¶ 14} In this case, the commission points to soilage on the employer's equipment as evidence of use, and, therefore, accessibility. The flaw in this logic is that the photos were taken *fourteen months* after the accident. Yes, there are equipment purchase invoices that predate the accident, but these establish only that

the employer owned some safety equipment on the date of injury. They do not establish accessibility, nor does the soilage on the equipment. That soilage could have just as easily occurred in the fourteen months after the accident as before.

{¶ 15} We accordingly find that the commission's denial of claimant's application was not based on "some evidence" of equipment availability on the date of injury, and we further find that the commission abused its discretion in finding no violation of Ohio Adm.Code 4121:1-3-03(J)(1).

{¶ 16} In light of the above finding, analysis of Ohio Adm.Code 4121:1-3-03(L)(1) is unnecessary. If Ohio Adm.Code 4121:1-3-03(J)(1) applies, as we have found, then the use of safety lines, etc., is not "impractical" and (L)(1) is irrelevant.

{¶ 17} That portion of the court of appeals' judgment that found no violation of Ohio Adm.Code 4121:1-3-03(J)(1) is reversed. The balance of the judgment is affirmed.

*Judgment affirmed in part*
*and reversed in part.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

COOK and LUNDBERG STRATTON, JJ., dissent.

_____

**COOK, J., dissenting.**

{¶ 18} Based on the rationale set forth in the decision of the court of appeals' magistrate, I respectfully dissent.

LUNDBERG STRATTON, J., concurs in the foregoing dissenting opinion.

_____

*Mark B. Weisser*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Jon D. Grandon*, Assistant Attorney General, for appellee.

_____