[This decision has been published in *Ohio Official Reports* at 91 Ohio St.3d 137.]

THE STATE EX REL. AVALOTIS PAINTING COMPANY, INC., APPELLANT, *v*.

INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Avalotis Painting Co. v. Indus Comm*., 2001-Ohio-243.]

*Workers' compensation—Mandamus sought to vacate Industrial Commission's order finding painting company in violation of a specific safety requirement, Ohio Adm.Code 4121:1-3-03(J)(1)—Court of appeals' denial of writ affirmed.*

(No. 99-1029—Submitted January 9, 2001—Decided March 14, 2001.)

APPEAL from the Court of Appeals for Franklin County, No. 98AP-798.

_____

*Per Curiam*.

{¶ 1} Avalotis Painting Company ("Avalotis"), appellant, sought a writ of mandamus to vacate appellee Industrial Commission of Ohio's order finding Avalotis in violation of a specific safety requirement ("VSSR"). The Court of Appeals for Franklin County denied the writ, finding that the commission did not abuse its discretion in granting this VSSR. Avalotis appeals as of right.

{¶ 2} In September 1994, appellee Robert Gordon suffered traumatic injuries when he fell four stories while painting in an industrial building for Avalotis. He was standing on one narrow I-beam in order to paint another beam above him when he lost his balance and landed on the concrete floor below. At the time of his accident, no lifeline from which Gordon could have tied-off had been rigged, and he had no other way both to secure himself and paint where his foreman had instructed him to work.

{¶ 3} Gordon's workers' compensation claim was recognized for a host of conditions, including paraplegia. He applied for additional compensation, alleging Avalotis's VSSR, and the commission granted his application. The commission

determined that Avalotis had violated Ohio Adm.Code 4121:1-3-03(J)(1), which required that employers "provide" lifelines, safety belts, and lanyards, and that employees "wear" them when working more than fifteen feet above ground. The commission premised its ruling on the findings that (1) a lifeline, or safety cable, could have been rigged at the specific site to which Gordon's foreman assigned him, allowing Gordon to tie off with his harness and lanyard; and (2) Avalotis failed to provide this safety protection by rigging it for Gordon's use. The commission further justified its order by finding that Gordon's foreman had specifically instructed Gordon to work without the required lifeline when he ordered Gordon to "skin" out on the beams to paint them.[1]

{¶ 4} The court of appeals rejected Avalotis's argument that Gordon bore responsibility for rigging his own lifeline in his work area and that his injury therefore resulted from his own failure to use this safety equipment, which was available elsewhere at the worksite. The court instead found that the commission could reasonably construe Ohio Adm.Code 4121:1-3-03(J)(1) to assign the employer this responsibility, such that Avalotis's failure to put this equipment in place was the same as not having it at all. The court further found that while the commission sufficiently explained the evidence and reasoning necessary for its VSSR award, it had no basis for finding that Gordon's supervisor had specifically ordered him to paint "without any safety equipment."

{¶ 5} Three issues are presented for our review: (1) Did the commission abuse its discretion in finding that Avalotis had to rig the lifeline in order to "provide" it for the purpose of Ohio Adm.Code 4121:1-3-03(J)(1)? (2) Did the commission abuse its discretion in finding that Gordon's foreman instructed him to paint in specific disregard of the need for a lifeline? and (3) Did the commission abuse its discretion in granting this VSSR? For the reasons that follow, we find

---

1. "Skinning" is a practice whereby the painter ties off to the beam he sits on or straddles and then paints within his reach.

that (1) the commission had authority to construe this rule as requiring this employer to put a lifeline in place for Gordon's use; (2) by telling Gordon to skin out on the beams to paint them, his foreman effectively ordered him to paint without a lifeline; and (3) evidence of record established that Avalotis had not rigged the required lifeline, and the commission adequately explained this in its order. Accordingly, we affirm the judgment to deny a writ of mandamus, albeit on a partially different basis than that provided in the court of appeals' order.

*Ohio Adm.Code 4121:1-3-03(J)(1)*

{¶ 6} Ohio Adm.Code 4121:1-3-03(J)(1) provided[2]:

"Lifelines, safety belts and lanyards shall be provided by the employer and it shall be the responsibility of the employee to wear such equipment when * * * exposed to hazards of falling [because] the operation being performed is more than fifteen feet above ground or above a floor or platform * * *. Lifelines and safety belts shall be securely fastened to the structure * * *." 1979-1980 OMR 4-25, 4-28.

{¶ 7} A "lanyard" is "a rope, suitable for supporting one person. One end is fastened to a safety belt or harness and the other end is secured to a substantial object or a safety line." A "lifeline" is defined as "a rope suitable for supporting one person to which a lanyard or safety belt (harness) is attached." A "safety belt or harness" is "a device, worn around the body, which, by reason of its attachment to a lanyard and lifeline or a structure, will prevent an employee from falling." Ohio Adm.Code 4121:1-3-03(B)(2), (3), and (7). To "provide" this equipment means to make it "available," which requires the employer to supply the equipment at some point before it is needed. Ohio Adm.Code 4121:1-3-01(B)(20); *State ex rel. Quality*

---

2. Ohio Adm.Code 4121:1-3-03(J)(1) was amended effective April 1, 1999. See 1998-1999 OMR 843, 846.

*Tower Serv., Inc. v. Indus. Comm.* (2000), 88 Ohio St.3d 190, 193, 724 N.E.2d 778, 780; *State ex rel. Mayle v. Indus. Comm.* (1999), 86 Ohio St.3d 74, 711 N.E.2d 687.

{¶ 8} Avalotis argues that in assigning the responsibility to actually rig a lifeline to the employer, the commission's construction tacks onto Ohio Adm.Code 4121:1-3-03(J)(1) an additional requirement without prior notice. Moreover, since specific safety requirements are unenforceable to the extent they fail to "plainly apprise" employers of their legal obligations to employees, *State ex rel. Waugh v. Indus. Comm.* (1997), 77 Ohio St.3d 453, 456, 674 N.E.2d 1385, 1388, Avalotis maintains that it is not liable for this VSSR. Avalotis further argues that since the required lifeline was "available" to Gordon before he began painting on the day he fell, Avalotis actually complied with the safety requirement and, therefore, had no liability under the "unilateral negligence" defense.[3]

{¶ 9} The court of appeals rejected these arguments, again because the lifeline was not in place at the site from which Gordon fell. The court explained:

"[T]he commission did not abuse its discretion in defining and applying 'provide' * * * to the facts of this case. Specifically, we find that the commission did not abuse its discretion when it interpreted Ohio Adm.Code 4121:1-3-03(J) to require the employer to have a lifeline in place in the area where their employees are instructed to work. A lifeline is useless if it's not in place for the employee to tie off. This interpretation is reasonable and logical and, therefore, affords [Avalotis] notice of its obligation pursuant to the code."

{¶ 10} In reaching this conclusion, the court of appeals adopted its magistrate's report, which distinguished a lifeline from either a lanyard or a safety belt because, under Ohio Adm.Code 4121:1-3-03(J)(1), the employee is accountable only for equipment that is "worn," i.e., "a 'lifeline' cannot be worn."

---

3. "Unilateral negligence" is a defense to VSSR liability when an employer makes requisite equipment available but the employee chooses not to use it. *State ex rel. Quality Tower Serv., Inc. v. Indus. Comm.* (2000), 88 Ohio St.3d 190, 193, 724 N.E.2d 778, 780.

We agree, especially since, in this case, rigging a lifeline was not even one of Gordon's job duties.

{¶ 11} Testimony showed that the responsibility for rigging this particular lifeline belonged to another shift and, furthermore, that it required a crew of employees to do it. Thus, while Gordon, who knew how to rig a lifeline, could have been more cautious and demanded the installation of a lifeline from his foreman, as a practical matter, it was not his job. He, therefore, had no basis to enforce this specific safety requirement, particularly after his foreman had just told him what he was to do and where.

{¶ 12} Accordingly, the commission was justified in applying Ohio Adm.Code 4121:1-3-03(J)(1) as it did in this context.

*Foreman's Instruction*

{¶ 13} The commission found that by directing Gordon to skin out on beams to paint them, Gordon's foreman specifically ordered him to work without a lifeline. Avalotis claims that the commission ignored testimony describing the practice of skinning and found a VSSR because Gordon's foreman told him to paint without any safety protection *whatsoever*. The court of appeals agreed and consequently found an abuse of discretion because no evidence supported the conclusion that skinning was performed, in effect, without tying off at all.

{¶ 14} The court of appeals considered this abuse of discretion harmless in view of the other evidence establishing the instant VSSR; however, we see no abuse of discretion at all. Evidence in the record supports the commission's conclusion. Gordon's foreman testified that while he knew Gordon's work area had not been rigged with a lifeline, he thought that a lifeline could not be rigged in that space and that skinning was the only way to get the job done. He was wrong on all counts. A lifeline was rigged shortly after Gordon's accident, and Ohio Adm.Code 4121:1-3-03(J)(1) does not allow skinning in place of the protection provided by a lifeline.

**{¶ 15}** Accordingly, we find that the court of appeals erred in discrediting this part of the commission's VSSR order.

*Evidence of a VSSR*

**{¶ 16}** The court of appeals found evidence from which the commission could determine a VSSR, holding:

"[W]e conclude that the commission did not abuse its discretion when it determined that [Avalotis] failed to provide the requisite safety equipment. There was 'some evidence' in the record to support the commission's determination that the area where claimant was working was not rigged with a lifeline; that the claimant was too far away from any other objects to which he could have tied off; that looping his lanyard around the beam on which he was working would have made it impossible to perform the work he was instructed to do; and that the claimant was, indeed, instructed by his foreman * * * to work in an area [that] was not rigged with a lifeline."

**{¶ 17}** Avalotis contends that the commission failed to articulate precisely how it violated the standard in Ohio Adm.Code 4121:1-3-03(J)(1), but the court of appeals summarily dispensed with this argument and rightly so. It observed:

"[T]he commission did comply with [*State ex rel. Noll v. Indus. Comm.* (1991), 57 Ohio St.3d 203, 567 N.E.2d 245]. There was no rigging for [Gordon] to tie off where he was ordered to work. That alone is a sufficient explanation as to how [Avalotis] failed to make a lifeline available."

**{¶ 18}** Based on the foregoing, the commission did not abuse its discretion in any respect by finding Avalotis in violation of Ohio Adm.Code 4121:1-3-03(J)(1). Accordingly, we affirm the judgment denying a writ of mandamus to vacate the commission's order.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____

*Vorys, Sater, Seymour & Pease, L.L.P.*, and *Robert A. Minor*, for appellant.

*Betty D. Montgomery*, Attorney General, and *William J. McDonald,* Assistant Attorney General, for appellee Industrial Commission of Ohio.

_____