[Cite as *State ex rel. Byington Builders, Ltd. v. Indus. Comm.*, 2017-Ohio-2623.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Byington Builders Ltd., | : | |
| Relator, | : | |
| v. | : | No. 15AP-407 |
| Industrial Commission of Ohio and Thomas Trousdale, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on May 2, 2017

**On brief:** *Christopher S. Clark,* for relator*.* **Argued:** *Christopher S. Clark.*

**On brief:** *Michael DeWine,* Attorney General*,* and *Patsy A. Thomas,* for respondent, Industrial Commission of Ohio. **Argued:** *Patsy A. Thomas.*

**On brief:** *Calhoun, Kademenos & Childress, Co., LPA ,* and *Janet L. Phillips,* for respondent, Thomas Trousdale. **Argued:** *Janet L. Phillips.*

IN MANDAMUS
ON OBJECTION TO MAGISTRATE'S DECISION

BRUNNER, J.

{¶ 1} Relator, Byington Builders Ltd. ("Byington"), commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("the commission"), to vacate its order mailed November 20, 2014 granting the application of respondent, Thomas Trousdale, for an additional award for violation of a specific safety requirement ("VSSR") and to enter an order denying the application.

No. 15AP-407

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate found the commission did not abuse its discretion in determining that Ohio Adm.Code 4123:1-3-09(F)(1) required Byington to securely fasten a lifeline to the structure to which Trousdale could have attached a safety belt or harness that would have prevented Trousdale's fall. Based on this finding, the magistrate has recommended that we deny Byington's request for a writ of mandamus.

{¶ 3} Byington timely filed its objection to the magistrate's decision. Trousdale and the commission timely filed their respective memorandum contra Byington's objection. After an examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration of the objection, we overrule Byington's objection and adopt the magistrate's findings of fact and conclusions of law as our own.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 4} The facts in this matter are undisputed. Trousdale sustained a work-related injury on September 2, 2011, when he fell from a roof to the ground, approximately 25 feet below, in the course of and arising from his employment with Byington. At the time Trousdale fell from the roof, he was not wearing fall protection equipment. Byington acknowledged it had neither provided Trousdale with fall protection to wear nor installed safety nets or a catch platform around the roof. Trousdale's claim was allowed.

{¶ 5} On November 8, 2012, Trousdale filed an application for a VSSR award, alleging that Byington had violated former Ohio Adm.Code 4121:1-3-09(E)(1) and (2) (current Ohio Adm.Code 4123:1-3-09 (E)(1) and (2)) regarding the installation of roofing brackets, and former Ohio Adm.Code 4121:1-3-09(F)(1) (current Ohio Adm.Code 4123:1-3-09(F)(1)) regarding the installation of catch platforms or a lifeline for pitched roofs.

{¶ 6} The Bureau of Workers' Compensation's Safety Violations Investigative Unit investigated and generated a report containing affidavits of Trousdale and Aaron Byington as exhibits. Both affiants averred that Trousdale was not wearing fall protection equipment when he fell from the roof. Trousdale further averred that Byington had neither provided him with fall protection to wear nor installed safety nets or a catch platform around the roof. Byington does not dispute that roof hooks had not been

No. 15AP-407

installed at the work site at which Trousdale was working, but averred that safety belts, lifelines, lanyards, roof jacks, and toe-boards were at the jobsite, and that "[t]he fall protection was in use on the roof and some of it was in the company trailer at the jobsite." (June 5, 2015 Stipulation of Evidence at 16.)

{¶ 7} On November 12, 2014, Trousdale's VSSR application was heard by a commission staff hearing officer ("SHO"), who subsequently issued an order finding that Byington had violated Ohio Adm.Code 4123:1-3-09(F)(1), and that the violation was the proximate cause of Trousdale's injury. The SHO found, however, that Byington had not violated Ohio Adm.Code 4123:1-3-09(E)(1) regarding the installation of roof brackets. The SHO granted Trousdale's VSSR application in part and denied it in part.

{¶ 8} Byington's motion for rehearing was denied by another SHO by order mailed February 10, 2015. Byington then filed this mandamus action on April 13, 2015.

## II. OBJECTION TO THE MAGISTRATE'S DECISION

{¶ 9} Byington does not present any specifically enumerated objection to the magistrate's decision, stating instead as follows:

> Relator objects to the decision of the magistrate filed with the court on Mary 24, 2016, denying relator's request for writ of mandamus and affirming the decision of the Industrial Commission of Ohio finding that relator violated a specific safety requirement (VSSR) resulting in the injuries sustained by respondent, Trousdale on September 2, 2011.

(June 7, 2016 Obj. to Mag. Decision at 2.) Byington restates the arguments it presented in its merit brief, all of which the magistrate considered and rejected.

## III. LAW AND DISCUSSION

{¶ 10} To be entitled to relief in mandamus, Byington must establish that it has a clear legal right to relief and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967), paragraph nine of the syllabus. To do so, Byington must demonstrate that the commission abused its discretion and, "in this context, abuse of discretion has been repeatedly defined as a showing that the commission's decision was rendered without some evidence to support it." *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18, 20 (1987). To be successful in this mandamus action, Byington Builders must show that the commission's decision is not supported by some evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26

No. 15AP-407

Ohio St.3d 76 (1986). Conversely, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion, and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Credibility and the weight to be given evidence are clearly within the discretion of the commission as the fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 11} As the magistrate's decision clarifies, the relevant inquiry in this matter is whether Byington installed the necessary safety equipment required under Ohio Adm.Code 4123:1-3-09(F)(1). The magistrate's decision contains a comprehensive discussion of the statutory and case law regarding this issue. A specific safety requirement must clearly inform an employer of the legal obligations owed to employees. *State ex rel. Holdosh v. Indus. Comm.*, 149 Ohio St. 179 (1948), syllabus; *State ex rel. Trydle v. Indus. Comm.*, 32 Ohio St.2d 257, 261 (1972) (citing and paraphrasing the *Holdosh* syllabus). Because a VSSR finding results in a penalty, specific safety requirements must be strictly construed in the employer's favor. *State ex rel. Burton v. Indus. Comm.*, 46 Ohio St.3d 170 (1989). "The commission has the discretion to interpret its own rules; however, where the application of those rules to a unique factual situation give rise to a patently illogical result, common sense must prevail." *State ex rel. Harris v. Indus. Comm.*, 12 Ohio St.3d 152, 153 (1984). A reviewing court must defer to the commission's interpretation when it relies on its own common sense to avoid an illogical result. *State ex rel. Devore Roofing & Painting v. Indus. Comm.*, 101 Ohio St.3d 66, 2004-Ohio-23, ¶ 22, *recon. denied*, 101 Ohio St.3d 1491, 2004-Ohio-1293.

{¶ 12} The magistrate found helpful *State ex rel. Avalotis Painting Co. v. Indus. Comm.*, 91 Ohio St.3d 137 (2001). The commission granted a VSSR award to an Avalotis Painting Company ("Avalotis") employee who had suffered an industrial injury after falling four stories. The commission determined that Avalotis had violated Ohio Adm.Code 4121:1-3-03(J)(1), which required that employers "provide" lifelines, safety belts and lanyards, and that employees "wear" them when working more than 15 feet above ground. The commission premised its ruling on the findings that: (1) a lifeline or safety cable, could have been rigged at the specific site to which Gordon's foreman assigned him allowing Gordon to tie off with his harness and lanyard; and (2) Avalotis

No. 15AP-407

failed to provide this safety protection by rigging it for Gordon's use. Avalotis filed a mandamus action in this Court, in which we rejected Avalotis' argument that Gordon bore responsibility for rigging his own lifeline in his work area and that his injury therefore resulted from his own failure to use the safety equipment that was available elsewhere at the worksite. We found instead that the commission could reasonably construe Ohio Adm.Code 4121:1-3-03(J)(1) to assign the employer this responsibility such that Avalotis' failure to put this equipment in place was the same as not having it at all. *State ex rel. Avalotis Painting Co. v. Indus. Comm.*, 10th Dist. No. 98AP-798 (1999). After we denied the writ, Avalotis appealed to the Supreme Court of Ohio, which affirmed the judgment and denied the writ. *Avalotis Painting Co.*, 91 Ohio St.3d 137.

{¶ 13} The magistrate's decision included a discussion of the applicability of the Supreme Court's holding in *Avalotis* to this case:

> The magistrate recognizes that, unlike Ohio Adm.Code 4123:1-3-03(J)(1), Ohio Adm.Code 4123:1-3-09(F)(1) does not use the word "provide" which was under discussion in the *Avalotis* case. However, both rules fail to spell out who is responsible for rigging the lifeline—the employer or the worker. As *Avalotis* shows, logic requires the conclusion that the employer bear the responsibility of rigging the lifeline. It is not the responsibility of the worker to rig his own lifeline or to request that his employer rig a lifeline. The employer is not allowed to assume that it bears no responsibility for rigging a lifeline until the worker requests that a lifeline be rigged for his use.
>
> Given the above analysis, neither proximate cause nor unilateral negligence are truly issues.

(App'x at ¶ 47-48.) We find *Avalotis* applicable to the present case.

{¶ 14} We find that the magistrate appropriately concluded as follows:

> Unilateral negligence sufficient to avoid a VSSR liability can exist only if there is evidence that the employer initially satisfied the specific safety requirement and the claimant disabled or otherwise circumvented the safety apparatus. *State ex rel. Frank Brown & Sons, Inc. v. Indus. Comm.*, 37 Ohio St.3d 162 (1988). Here, Byington Builders did not initially satisfy the specific safety requirement and, thus, it cannot be held that claimant disabled or circumvented a safety device.

(App'x at ¶ 50.)

No. 15AP-407

## IV. CONCLUSION

{¶ 15} Following an independent review of this matter and giving due consideration to Byington's objection, we find the magistrate has properly determined the pertinent facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of facts and conclusions of law therein. In accordance with the magistrate's decision, we deny the requested writ of mandamus.

*Objection overruled;*
*writ of mandamus denied.*

SADLER and DORRIAN , JJ., concur.

_____

No. 15AP-407

APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Byington Builders Ltd., | : | |
| Relator, | : | |
| v. | : | No. 15AP-407 |
| Industrial Commission of Ohio and Thomas Trousdale, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

---

M A G I S T R A T E ' S   D E C I S I O N

Rendered on May 24, 2016

---

*Christopher S. Clark,* for relator.

*Michael DeWine,* Attorney General, and *Patsy A. Thomas,* for respondent Industrial Commission of Ohio.

*Calhoun, Kademenos,* and *Janet Phillips,* for respondent Thomas Trousdale.

---

IN MANDAMUS

{¶ 16} In this original action, relator, Byington Builders Ltd. ("Byington Builders" or "relator"), requests a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order granting to respondent, Thomas Trousdale ("claimant"), his application for an additional award for violation of a specific safety requirement ("VSSR"), and to enter an order denying the application.

No. 15AP-407

Findings of Fact:

{¶ 17} 1. On September 2, 2011, claimant sustained serious injuries while employed as a roofer for Byington Builders. On that day, claimant fell off of a roof when he stepped on a loose shingle.

{¶ 18} 2. The industrial claim (No. 11-847390) is allowed.

{¶ 19} 3. On November 8, 2012, claimant filed an application for a VSSR award. On his application, claimant alleged that relator had violated former Ohio Adm.Code 4121:1-3-09(E)(1) and (2) regarding roofing brackets and former Ohio Adm.Code 4121:1-3-09(F)(1) regarding catch platforms for pitched roofs. Those alleged specific safety requirements can be currently found at Ohio Adm.Code 4123:1-3-09(E)(1) and (2) and at 4123:1-3-09(F)(1).

{¶ 20} 4. The VSSR application prompted an investigation by the Safety Violations Investigative Unit ("SVIU") of the Ohio Bureau of Workers' Compensation ("bureau").

{¶ 21} 5. On April 8, 2014, an SVIU special investigator conducted an on-site investigation at the home offices of Byington Builders where he met Aaron Byington, the owner of Byington Builders.

{¶ 22} 6. The special investigator obtained an affidavit from Aaron Byington executed April 8, 2014. The affidavit avers:

> [Two] Thomas Trousdale contacted me and asked me if I had any work for him. He had worked for me on and off approximately two other times. Thomas started working at [the] job on Monday and Tuesday and then he was off on Wednesday for a doctor's appointment. On Thursday, I assigned Thomas to a jobsite where we were installing new shingles on the Countryset Apartments * * *. Thomas was injured in the morning of his first day at this particular[r] jobsite.
>
> [Three] I was not present at the time of the incident involving Thomas Trousdale. I received a call and was informed that Thomas had fallen off the roof. I immediately drove to the jobsite and arrived just as Thomas [was] being taken away in the ambulance. I then drove to Fireland's Hospital to check on him. * * *
>
> [Four] I returned to the jobsite to talk with my other employees and find out what happened to Thomas. An employee with the first name of Dillon told me that he saw

No. 15AP-407

Thomas hanging from the corner of the building just before he dropped into a bush below.

[Five] There were safety belts, lifelines, lanyards, roof jacks, and wood for toe-boards at the jobsite. The fall protection was in use on the roof and some of it was in the company trailer at the jobsite. Thomas is a union roofer an is familiar with the proper use of the fall protection, roof jacks, and toe-boards.

{¶ 23} 7. Later, the special investigator obtained an affidavit from claimant executed February 21, 2014. Claimant's affidavit avers:

[Two] I began my employment with Byington Builders on the Monday of the week I was injured. My injury occurred on Friday of the week I began my employment with the company. Byington Builders did general construction and I was employed as a roofer. I had prior roofing experience before working for Byington Builders.

[Three] On September 2, 2011, I was assigned to a two-story apartment complex * * * to perform roofing work. It was approximately twenty-five feet from the bottom of the roof where the gutters would go to the ground. The pitch of the roof was, I believe, 8-12. The job required installing new trusses to make the pitch of the roof and the installing [of] new plywood and shingles.

[Four] I was in the process of installing roof caps towards the peak and I was about one-quarter of the way up the pitched roof. Someone left a loose piece of shingle on the roof and I stepped on it while coming down the roof to get more roof caps. My feet slipped out from under me and I slid down the roof and fell to the ground. I landed on my butt in a seated position and sustained injuries from the fall. An ambulance was called and I was transported to Firelands Hospital for medical treatment.

[Five] The employer did not provide me with fall protection to wear while working on the roof. I was not given a safety belt, lifeline, or lanyard to use while working on the roof. The employer did not install safety nets or a catch platform around the roof. The employer did not install roof jacks or toeboards on the roof.

No. 15AP-407

{¶ 24} 8. On May 1, 2014, the SVIU special investigator issued his report of investigation. The affidavits of Aaron Byington and claimant were presented as exhibits to the report.

{¶ 25} 9. On November 12, 2014, the VSSR application was heard by a commission staff hearing officer ("SHO"). The hearing was recorded and transcribed for the record.

{¶ 26} 10. Following the hearing, the SHO issued an order finding that relator had violated Ohio Adm.Code 4123:1-3-09(F)(1) and that the violation was the proximate cause of the industrial injury. The SHO's order explains:

> The Injured Worker's IC-8 Application filed 11/08/2012 is granted in part and denied in part as follows.
>
> It is the finding of the Staff Hearing Officer that the Injured Worker was employed on the date of injury noted above, by the Employer as a roofer, and that the Injured Worker sustained an injury in the course of and arising out of employment when he stepped on a loose shingle while roofing and fell off of the roof.
>
> It is further the finding of the Staff Hearing Officer that the Injured Worker's injury was the result of the Employer's failure to install catch platforms or to fasten a lifeline to the roof in lieu of a catch platform, as required by the following Ohio Administrative Code (OAC) section related to the Construction Industry:
>
> 4123:1-3-09(F)(1)
>
> * * *
>
> The Injured Worker was injured on 09/02/2011 while working for the named Employer as a roofer. The Injured Worker was on the roof of an apartment building installing roof caps approximately 1/4 the way up on a pitched roof (per Injured Worker's affidavit dated 02/21/2014). The Injured Worker indicated he stepped on a loose piece of shingle and fell to the ground. The Employer, Mr. Byington, stipulated at hearing that the height from the ground to the top of the roof was 22 feet. Mr. Byington, the employer, also testified that the pitch of the roof was "6-12." * * *
>
> The Injured Worker alleged a violation of OAC 4123:1-3-09(E)(1) and (2). Those sections state in pertinent part as follows:

No. 15AP-407

(E) Roofing brackets.

(1) Construction

Roofing brackets shall be constructed to fit the pitch of the roof.

(2) Fastening.

Roofing brackets shall be securely fastened in place. When brackets cannot be securely fastened by any other means, rope supports shall be used. When rope supports are used, such supports shall consist of manila rope of no less than three-quarter-inch diameter, or equivalent.

The Staff Hearing Officer finds that the Employer did not violate this code section. The Staff Hearing Officer finds that 4123:1-3-09(E)(1) lacks specificity in that it does not put the Employer on notice as to when roofing brackets are required to be placed on a roof and when they are not. This code section does not inform and plainly apprise an Employer of what is required for the protection of its employees. The code section does not indicate what pitch of roof requires a roof bracket. Clearly it does not apply to all roofs as it is unclear as to why a flat roof or one with only a slight pitch would require a roofing bracket be installed. As the code section lacks specificity, the Employer would not know from this provision whether a "6-12" roof would require roofing brackets to be installed. As the code sections must be strictly construed in favor of the Employer, the Staff Hearing Officer finds no violation of this code section. The Staff Hearing Officer found no section in the construction codes which specifies under what circumstances a roofing bracket is required. The requirement that a bracket be constructed "to fit the pitch of the roof" lacks specificity.

The Injured Worker also alleged a violation of OAC 4123:1-3-09(F)(1). That section states in pertinent part as follows:

(F) Catch platforms for pitched and flat roofs.

(1) Catch platforms for pitched roofs.

On pitched roofs with a rise of four inches in twelve or greater, sixteen feet or more above ground, and not having a parapet of at least thirty inches in height, catch platforms

shall be installed. The platform shall extend two feet beyond the projection of the eaves and shall be provided with a standard guardrail substantially fixed in place. Safety belts attached to a lifeline which are securely fastened to the structure may be used in lieu of a catch platform.

The Staff Hearing Officer finds this section applies to the instant claim and finds the Employer has violated this specific safety requirement. The Employer testified at hearing that the roof involved was a pitched roof with a rise of four inches in 12 or greater. Specifically the Employer testified the pitch of the roof involved was six inches in 12 ("6-12"). Further the Employer testified that the roof involved was 22 feet from the ground. Therefore the requirement of the roof being 16 feet or more above ground has also been met. Upon cross-examination of the Employer by the Injured Worker's representative, the Employer testified that there was no parapet around the edge of the roof and that no catch platform was installed on the roof in question. The Employer's representative argued that the above cited code section provides an alternative to the requirement of installing a catch platform. Specifically, he argued that safety belts or harnesses attached to a lifeline may be used in lieu of a catch platform. Mr. Byington, the owner of the company (ie the Employer), Mr. Mock, a "lead man/supervisor" for the Employer, and Mr. Pengov, another supervisor for the Employer, all testified that the Employer had a work trailer on site which contained buckets containing lanyards, and that harnesses were also contained in the work trailer on site. Those persons testified that all workers would meet at the trailer every morning where the equipment, tools, etc, as well as the safety equipment (harnesses, lifelines, lanyards) were located. Mr. Byington testified all workers were told the safety equipment was available and Mr. Mock specifically indicated that he instructed the employees that they had the option to wear the safety equipment if they felt unsafe on the roof, but that no one on the job asked to use a harness. Mr. Mock further testified on cross examination that no parapets or catch basins were installed on the roof in question. Both the Injured Worker and his witness, Mr. Clift, indicated they never saw a trailer on the job site and never saw any safety equipment. The Injured Worker specifically testified that he was never told by the Employer that any safety equipment was available. Mr. Mock testified that he showed the Injured Worker the trailer on the Injured Worker's first day on that building which was on Thursday, 09/01/2011. The Injured

No. 15AP-407

Worker testified he had never seen Mr. Mock on a job site and never saw him on Thursday (09/01/2011) or on Friday (09/02/2011). Further, the Employer and his two witnesses allege they had never seen Mr. Clift before, yet Mr. Clift indicated he worked at the job site from Monday through Friday of the week of injury, but that he quit after the Injured Worker fell on 09/02/2011. His employment could not be verified as he testified he was to be paid in cash and never got paid. The Employer acknowledged that workers keep track of their own hours, the "honor system," and that some workers are paid in cash. However he denied hiring Mr. Clift as a roofer for his company.

It is obvious that the Employer and his witnesses dispute the testimony of the Injured Worker and his witness regarding the presence of safety equipment on the job site and whether or not the Injured Worker knew of the presence of the safety equipment. Even when construing the evidence in favor of the Employer, ie. that the safety equipment was on-site and that the Injured Worker knew of its availability, the Staff Hearing Officer still finds a violation of 4123:1-03-09(F)(1). Even assuming safety belts were available, 4123:1-3-09(F)(1) requires that they be "attached to a lifeline which is securely fastened to the structure" in order to satisfy the requirement of being used "in lieu of a catch platform." This particular code section places the burden on the Employer, not the Injured Worker, to securely fasten a lifeline to the structure. There was no testimony at hearing that a lifeline was securely fastened to the roof for those employees who may have chosen to use a safety belt. "Securely fastened" is defined in OAC 4123:1-3-01(B)(24) as meaning "that the object or thing referred to shall be substantially fixed in place." OAC 4123:1-3-09(F)(1) does not place the responsibility on the Injured Worker to fasten a lifeline to the structure. Rather, the Employer has the option to either install a catch basin or to fasten a lifeline to the roof so that those wishing to use a safety belt would have something to attach the safety belt to on the structure. The Employer in the instant case did not install either of those devices and as such, is found to be in violation of OAC 4123:1-3-09(F)(1).

* * *

The Staff Hearing Officer finds that the Employer's non-compliance with OAC 4123:1-3-09(F)(1) was the proximate cause of the injury as the Employer's compliance with that code section would have prevented the fall from the roof. The

No. 15AP-407

> Staff Hearing Officer finds the violation to be serious, warranting a 40% penalty. The Staff Hearing Officer notes that the Injured Worker testified that another worker fell off of the same roof, earlier in the week but prior to the day of the Injured Worker's fall, but that that worker "Joe" landed on a balcony rather than falling to the ground. The Employer offered no evidence to rebut the testimony that another worker had fallen off of the same roof just days prior to the Injured Worker's fall. Despite the first worker falling, the Employer still did nothing to protect the other workers from a fall hazard such as installing a catch basin or securing a lifeline to the roof to prevent future falls, as required by OAC 4123:1-3-09(F)(1).

(Emphasis sic.)

{¶ 27} 11. Relator moved for rehearing pursuant to Ohio Adm.Code 4121-3-20(E).

{¶ 28} 12. On February 10, 2015, another SHO mailed an order denying the motion for rehearing.

{¶ 29} 13. On April 13, 2015, relator, Byington Builders, Ltd., filed this mandamus action.

Conclusions of Law:

{¶ 30} The main issue is whether the commission, through its SHO's order of November 12, 2014 abused its discretion in determining that Ohio Adm.Code 4123:1-3-09(F)(1) required relator to securely fasten to the structure upon which claimant was working a lifeline to which claimant could have attached a safety belt or harness that would have prevented his fall.

{¶ 31} Finding no abuse of discretion, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.

{¶ 32} Currently, Chapter 4123:1-3 (formerly 4121:1-3) of the Ohio Administrative Code provides specific safety requirements for "construction activity." Ohio Adm.Code 4123:1-3-01(A).

{¶ 33} Ohio Adm.Code 4123:1-3-01(B) provides two definitions pertinent here:

> (16) "Lanyard means a flexible line rope, wire rope, or strap which generally has a connector at each end for connecting the body belt or body harness to a line or anchorage.
>
> * * *

(24) "Securely fastened" means that the object or thing referred to shall be substantially fixed in place.

{¶ 34} Ohio Adm.Code 4123:1-3-09 is captioned "Roofing devices." Thereunder, Ohio Adm.Code 4123:1-3-09(E) is captioned "Roofing brackets." Thereunder, it is stated:

(1) Construction.

Roofing brackets shall be constructed to fit the pitch of the roof.

(2) Fastening.

Roofing brackets shall be securely fastened in place. When brackets cannot be securely fastened by any other means, rope supports shall be used. When rope supports are used, such supports shall consist of manila rope of no less than three-quarter-inch diameter, or equivalent.

{¶ 35} Ohio Adm.Code 4123:1-3-09(F) is captioned "Catch platforms for pitched and flat roofs." Thereunder, Ohio Adm.Code 4123:1-3-09(F)(1) provides:

(1) Catch platforms for pitched roofs.

On pitched roofs with a rise of four inches in twelve or greater, sixteen feet or more above ground, and not having a parapet of at least thirty inches in height, catch platforms shall be installed. The platform shall extend two feet beyond the projection of the eaves and shall be provided with a standard guardrail substantially fixed in place. Safety belts or harnesses attached to a lifeline which is securely fastened to the structure may be used in lieu of a catch platform.

{¶ 36} Ohio Adm.Code 4123:1-3-03 is captioned "Personal protective equipment." The following is stated under "(A) Scope:"

The requirements of this rule relate to the personal protective equipment listed immediately below, as required for employees on operations described in this rule in which there is a known hazard, recognized as injurious to the health or safety of the employee.

Ohio Adm.Code 4123:1-3-03(B) provides the following three definitions:

(2) "Lanyard" means a flexible line of rope, wire rope, or strap which generally has a connector at each end for

> connecting the body belt or body harness to a life line or anchorage.
>
> (3) "Vertical Lifeline" means a rope, suitable for supporting one person, to which a lanyard or safety belt (or harness) is attached.
>
> * * *
>
> **(7)** "Safety belt or harness" means a device, worn around the body, which, by reason of its attachment to a lanyard and lifeline or a structure, will prevent an employee from falling.

{¶ 37} Ohio Adm.Code 4123:1-3-03(J) is captioned "Safety belts, harness lifelines and lanyards." Thereunder, Ohio Adm.Code 4123:1-3-03(J)(1) provides:

> Lifelines, safety belts or harnesses and lanyards shall be provided by the employer, and it shall be the responsibility of the employee to wear such equipment when exposed to hazards of falling where the operation being performed is more than six feet above ground or above a floor or platform, except as otherwise specified in this chapter * * *. Lifelines and safety belts or harnesses shall be securely fastened to the structure and shall sustain a static load of no less than three thousand pounds.

{¶ 38} The portion of the SHO's order of November 12, 2014 most pertinent to the issue here again states as follows:

> Even when construing the evidence in favor of the Employer, ie. that the safety equipment was on-site and that the Injured Worker knew of its availability, the Staff Hearing Officer still finds a violation of 4123:1-03-09(F)(1). Even assuming safety belts were available, 4123:1-3-09(F)(1) requires that they be "attached to a lifeline which is securely fastened to the structure" in order to satisfy the requirement of being used "in lieu of a catch platform." This particular code section places the burden on the Employer, not the Injured Worker, to securely fasten a lifeline to the structure. There was no testimony at hearing that a lifeline was securely fastened to the roof for those employees who may have chosen to use a safety belt. "Securely fastened" is defined in OAC 4123:1-3-01(B)(24) as meaning "that the object or thing referred to shall be substantially fixed in place." OAC 4123:1-3-09(F)(1) does not place the responsibility on the Injured Worker to fasten a lifeline to the structure. Rather, the Employer has the option to either install a catch basin or to fasten a lifeline

No. 15AP-407

> to the roof so that those wishing to use a safety belt would have something to attach the safety belt to on the structure. The Employer in the instant case did not install either of those devices and as such, is found to be in violation of OAC 4123:1-3-09(F)(1).

{¶ 39} A specific safety requirement must be "of a character plainly to apprise an employer of his legal obligations toward his employees." *State ex rel. Holdosh v. Indus. Comm.,* 149 Ohio St. 179 (1948), syllabus; *State ex rel. Trydle v. Indus. Comm.,* 32 Ohio St.2d 257, 261 (1972) (citing and paraphrasing the *Holdosh* syllabus).

{¶ 40} Because a VSSR results in a penalty, specific safety requirements must be strictly construed in the employer's favor. *State ex rel. Burton v. Indus. Comm.,* 46 Ohio St.3d 170 (1989).

{¶ 41} Under *State ex rel. Harris v. Indus. Comm.,* 12 Ohio St.3d 152, 153 (1984), "[t]he commission has the discretion to interpret its own rules; however, where the application of those rules to a unique factual situation gives rise to a patently illogical result, common sense should prevail." *Id.* at 153. By the same token, this court must defer to the commission's interpretation when it relies upon its own common sense to avoid an illogical result. *State ex rel. Devore Roofing & Painting v. Indus. Comm.,* 101 Ohio St.3d 66-70, 2004-Ohio-23.

{¶ 42} The magistrate finds helpful *State ex rel. Avalotis Painting Co. v. Indus. Comm.,* 91 Ohio St.3d 137 (2001), a case not cited by the parties to this action.

{¶ 43} In September 1994, Robert Gordon suffered traumatic injuries when he fell four stories while painting an industrial building for Avalotis Painting Company, Inc. ("Avalotis"). He was standing on one narrow I-beam in order to paint another beam above him when he lost his balance and landed on the concrete floor below. At the time of his accident, no lifeline from which Gordon could have tied off had been rigged, and he had no other way both to secure himself and paint where his foreman had instructed him to work.

{¶ 44} Following Gordon's filing of an application for VSSR award, the commission determined that Avalotis had violated Ohio Adm.Code 4121:1-3-03(J)(1) which required that employers "provide" lifelines, safety belts and lanyards, and that employers "wear" them when working more than 15 feet above ground. The commission premised its ruling

No. 15AP-407

on the findings that (1) a lifeline or safety cable, could have been rigged at the specific site to which Gordon's foreman assigned him allowing Gordon to tie off with his harness and lanyard; and (2) Avalotis failed to provide this safety protection by rigging it for Gordon's use.

{¶ 45} Avalotis filed a mandamus action in this court. This court rejected Avalotis' argument that Gordon bore responsibility for rigging his own lifeline in his work area and that his injury therefore resulted from his own failure to use this safety equipment, which was available elsewhere at the worksite. This court instead found that the commission could reasonably construe Ohio Adm.Code 4121:1-3-03(J)(1) to assign the employer this responsibility such that Avalotis' failure to put this equipment in place was the same as not having it at all. This court denied the writ and Avalotis appealed as of right to the Supreme Court of Ohio.

{¶ 46} In affirming this court's judgment and denying the writ, the Supreme Court explained:

> Avalotis argues that in assigning the responsibility to actually rig a lifeline to the employer, the commission's construction tacks onto Ohio Adm.Code 4121:1-3-03(J)(1) an additional requirement without prior notice. Moreover, since specific safety requirements are unenforceable to the extent they fail to "plainly apprise" employers of their legal obligations to employees, *State ex rel. Waugh v. Indus. Comm.* (1997), 77 Ohio St.3d 453, 456, 674 N.E.2d 1385, 1388, Avalotis maintains that it is not liable for this VSSR. Avalotis further argues that since the required lifeline was "available" to Gordon before he began painting on the day he fell, Avalotis actually complied with the safety requirement and, therefore, had no liability under the "unilateral negligence" defense.
>
> The court of appeals rejected these arguments, again because the lifeline was not in place at the site from which Gordon fell. The court explained:
>
> "The commission did not abuse its discretion in defining and applying 'provide' * * * to the facts of this case. Specifically, we find that the commission did not abuse its discretion when it interpreted Ohio Adm.Code 4121:1-3-03(J) to require the employer to have a lifeline in place in the area where their employees are instructed to work. A lifeline is useless if it's not in place for the employee to tie off. This interpretation is reasonable and logical and, therefore,

No. 15AP-407

> affords [Avalotis] notice of its obligation pursuant to the code."
>
> In reaching this conclusion, the court of appeals adopted its magistrate's report, which distinguished a lifeline from either a lanyard or a safety belt because, under Ohio Adm.Code 4121:1-3-03(J)(1), the employee is accountable only for equipment that is "worn," i.e., "a 'lifeline' cannot be worn." We agree, especially since, in this case, rigging a lifeline was not even one of Gordon's job duties.
>
> Testimony showed that the responsibility for rigging this particular lifeline belonged to another shift and, furthermore, that it required a crew of employees to do it. Thus, while Gordon, who knew how to rig a lifeline, could have been more cautious and demanded the installation of a lifeline from his foreman, as a practical matter, it was not his job. He, therefore, had no basis to enforce this specific safety requirement, particularly after his foreman had just told him what he was to do and where.
>
> Accordingly, the commission was justified in applying Ohio Adm.Code 4121:1-3-03(J)(1) as it did in this context.

*Id.* at 139-40.

{¶ 47} The magistrate recognizes that, unlike Ohio Adm.Code 4123:1-3-03(J)(1), Ohio Adm.Code 4123:1-3-09(F)(1) does not use the word "provide" which was under discussion in the *Avalotis* case. However, both rules fail to spell out who is responsible for rigging the lifeline—the employer or the worker. As *Avalotis* shows, logic requires the conclusion that the employer bear the responsibility of rigging the lifeline. It is not the responsibility of the worker to rig his own lifeline or to request that his employer rig a lifeline. The employer is not allowed to assume that it bears no responsibility for rigging a lifeline until the worker requests that a lifeline be rigged for his use.

{¶ 48} Given the above analysis, neither proximate cause nor unilateral negligence are truly issues.

{¶ 49} Citing *State ex rel. Bayless v. Indus. Comm.,* 50 Ohio St.3d 148 (1990), relator points out that the commission need not address employer compliance before it may reach proximate cause. (Relator's brief, 6.) However, given that relator's failure to securely fasten a lifeline is a violation of Ohio Adm.Code 4123:1-3-09(F)(1), it is clear

No. 15AP-407

beyond dispute that this failure was the proximate cause of the injury because claimant had no means on the date of injury to tie off.

{¶ 50} Unilateral negligence sufficient to avoid a VSSR liability can exist only if there is evidence that the employer initially satisfied the specific safety requirement and the claimant disabled or otherwise circumvented the safety apparatus. *State ex rel. Frank Brown & Sons, Inc. v. Indus. Comm.*, 37 Ohio St.3d 162 (1988). Here, Byington Builders did not initially satisfy the specific safety requirement and, thus, it cannot be held that claimant disabled or circumvented a safety device.

{¶ 51} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).