THE STATE, EX REL. UNITED STATES STEEL CORPORATION, APPELLANT, *v.* COOK ET AL., APPELLEES.

(No. 82AP-953—Decided June 16, 1983.)

*Messrs. Squire, Sanders & Dempsey, Mr. Preston J. Garvin* and *Mr. William J. Wahoff,* for appellant.

*Shapiro, Kendis & Assoc. Co., L.P.A., Mr. Alan J. Shapiro* and *Mr. James D. Kendis,* for appellee David L. Cook.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Mr. Douglas M. Kennedy,* for appellee Industrial Commission.

WHITESIDE, P.J. Relator-appellant, United States Steel Corporation ("rela-

tor"), appeals from a judgment of the Franklin County Court of Common Pleas denying relator's requested writ of mandamus ordering respondent-appellee Industrial Commission to vacate the additional award to respondent-appellee David L. Cook ("Cook") because of a violation of a specific safety requirement by relator. Unfortunately, relator has not set forth specific assignments of error but, instead, has set forth issues for decision which it then phrases more in the form of assignments of error when utilized as division headings in the argument portion of its brief. As such, there would be two assignments of error, which are phrased as subject headings as follows:

"I. The Court of Common Pleas should be reversed and a writ of mandamus issued because the Industrial Commission abused its discretion in finding that relator-appellant violated IC-9-05.12(B).

"II. The Court of Common Pleas should be reversed and a writ of mandamus should issue because all of the evidence before the Commission showed that claimant's injury was not a direct and proximate result of employer's failure, if any, to comply with a specific safety requirement."

Cook was employed as an associate technician by relator at the time of an industrial injury he sustained while operating a wire drawing block machine designed to process wire. Cook was injured when his hand became caught between the wire and the machine and he was pulled into the machine. The Industrial Commission found that relator had not properly safeguarded the machine but had violated IC-9-05.12(B) (now Ohio Adm. Code 4121:1-9-05[L][2]) governing steel mills, which provides:

"Wire drawing machines shall be equipped with means for stopping the machinery by contact of the employee's body in case he is caught in the machine."

The machine was equipped with a horizontal bar at foot level, a stop button which could be activated by the employee's knees and a horizontal bar at the level of the operator's midsection into which the operator could lean to stop the machine. All three devices were present and in working order on the day of the injury.

In order to activate the machine and cause wire from a spool to be drawn around a revolving block, the operator had to pull the middle or inch bar toward him and then step on the bottom stop-start bar, causing the machine to engage in slow speed, about sixty feet per minute.

To stop the machine, the operator need only to lean forward and hit the middle or inch bar with about ten pounds of body pressure. This device ran at waist level approximately the full length of the front of the machine about four inches from the top of the machine. Alternatively, to stop the machine, the operator could use his foot and press downward on the stop-start bar. In addition, the machine was equipped with a stop button at knee level, which could stop the machine and sound a loud buzzer.

At the time of his injury, Cook was operating the wire drawing machine by himself. The wire was running too tightly around the block, so he stopped the machine and adjusted the die with an Allen wrench. He then laid the wrench on the table of the machine next to the block and again activated the block by stepping on the stop-start bar; but, since the cast was loosening, he pulled the inch bar forward, engaging the block to a high rate of speed, approximately one hundred feet per minute. While standing at the operator's position in front of the machine, Cook reached for the Allen wrench with his right hand and transferred it to his left hand. At this moment, he dropped his right hand, and it was caught between the block and the wire. Although Cook had been trained on how to stop the machine in an emergency, he did not lean forward to hit the inch bar or step on the stop-start bar or hit the stop

button with his knee. Rather, he attempted to pull on the wire with his left hand in order to free his right hand. The block, revolving about one hundred feet per minute, drew Cook to the side of the block before he discovered that his efforts to free his right hand would not succeed. Cook stated that he walked around the front and side of the machine while trying to remove his hand. He was then pulled or moved up into the block and forced between the four rotating block pins and the back plate, which area has a four and one-eighth inch clearance. Although there were no witnesses to the accident, Cook apparently traveled around the machine a couple of times before the wire moved up the pin far enough for him to free his trapped right hand. At no time did the machine shut off, and Cook was found on the floor on the left side of the machine. The record includes the following drawing of the machine, including both a front view and a top view, as follows:

From the evidence, there can be no question but that Cook was caught in the machine, and it failed to stop when his body came into contact with the machine after his being caught. However, relator had provided three means by which an operator could voluntarily stop the machine in case of an emergency or if he became caught. Each system required some type of voluntary activity on the part of the operator in order to stop the machine. Two of the devices were essentially on-off switches, which the operator could utilize to stop the machine either by use of the midsection of his body or his foot. The third was a stop button designed for the operator to depress with his knee to stop the machine. There was no device which would stop the machine when an operator became caught in it in the absence of some voluntary activity or effort on the part of the operator to stop the machine. In other words, although there were devices for stopping the machine, there was no device meeting the exact provision of the safety rule that the machine "be equipped with means for stopping the machinery by contact of the employee's body in case he is caught in the machine." If the rule contemplates a method by which the operator may consciously and intentionally stop the machine by voluntarily causing some part of his body to come in contact with a stop-

ping device on the machine, relator complied with the regulation.

On the other hand, the regulation was not complied with by relator if, as respondent commission explicitly found, the requirement is that the machine be equipped with a device that will stop the machine when the operator becomes caught in it upon contact with some portion of the operator's body, without a voluntary effort on the part of the operator to stop the machine or any conscious and intentional tripping of a device to stop the machine. In other words, the commission construed the regulation as requiring some type of stopping device which would be tripped by contact of Cook's body if he became caught in the machine, without any necessity of the operator consciously and intentionally making an effort to stop the machine. This is a reasonable interpretation of the regulation and should not be interfered with by the court. The regulation, as construed by the commission, requires more than merely affording the operator an opportunity to stop the machine in the event he becomes caught in it, which is all that relator provided. Rather, as construed by the commission, the regulation requires that, if the operator becomes caught in the machine, the machine will stop when his body comes in contact with it. Accordingly, the commission did not abuse its discretion in finding that relator violated the rule.

Relator further contends that there was not sufficient evidence before the commission to justify its finding. However, there is little dispute of the evidence, the basic issue being one of law, not of fact. A review of the record reveals ample evidence to support the commission's conclusions if the rule be construed in the manner that the commission construed it. Accordingly, the first assignment of error is not well-taken.

The second assignment of error does not raise any additional issues, but merely a different contention raising the same issue. Essentially, relator contends that the proximate cause of the injury was Cook's failure to utilize the safety devices. However, negligence or contributory negligence of a claimant is not ordinarily a defense in a workers' compensation case. In fact, the safety regulation, such as the one with which we are here concerned, is intended to protect employees against their own negligence and folly as well as to provide them a safe place to work. Whether Cook was negligent in failing consciously to use the stopping devices available, rather than attempting to extricate himself from his dilemma first, is not controlling. The issue is whether the machine was equipped with safety devices, as required by IC-9-05.12(B). The commission found that it was not. Had the machine been properly equipped in compliance with the rule as construed by the commission, the machine would have stopped, minimizing any injury to Cook. The second assignment of error is not well-taken.

For the foregoing reasons, both assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

STRAUSBAUGH and NORRIS, JJ., concur.