THE STATE EX REL. DANSTAR BUILDERS, INC., APPELLANT, *v.*
INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Danstar Builders, Inc. v. Indus.*
*Comm.*, 108 Ohio St.3d 315, 2006-Ohio-1060.]

(No. 2005–0450—Submitted November 29, 2005—Decided March 22, 2006.)

**Per Curiam.**

{¶ 1} On December 31, 2001, Donald Knight Jr. was working on the roof of a home under construction in Delaware, Ohio. It is undisputed that there were no safety belts, lifelines, lanyards, or catch platforms on site.

{¶ 2} Others on site that day indicated that there were patches of ice on the roof. Shortly after lunch break, Knight slipped on the ice and fell face first from the roof to the ground. Eleven days later, he died from his injuries.

{¶ 3} Decedent's former wife, Lisa Knight, filed a workers' compensation death claim on behalf of the couple's minor children. The application named appellant Danstar Builders, Inc., as the employer. Danstar contested the claim, asserting, among other things, that Knight was an independent contractor and not a Danstar employee. A district hearing officer for appellee Industrial Commission of Ohio disagreed, naming Danstar as employer and allowing the claim.

{¶ 4} Lisa Knight later alleged violations of two specific safety requirements ("VSSR")—Ohio Adm.Code 4121:1–3–09(F)(1), now 4123:1–3–09(F)(1) (pitched roofs require a catch platform unless safety belts and lifelines are used) and 4121:1–3–03(J)(1), now 4123:1–3–03(J)(1) (operations above six feet, where a hazard of falling exists, require lifelines, safety belts or harnesses, and lanyards). Danstar did not dispute that there were no safety belts, lifelines, and lanyards on site and that there was no catch platform. It did allege that it had supplied wood to build slide guards on the roof, although the slide guards had never been

assembled. Slide guards, Danstar maintained, satisfied rules of the Occupational Safety and Health Administration ("OSHA").

{¶ 5} A staff hearing officer was not persuaded, concluding that it was immaterial whether OSHA might have considered slide guards adequate protection, because OSHA requirements were irrelevant to the requirements of the Ohio Administrative Code.

{¶ 6} The staff hearing officer also rejected two employment-related arguments made by Danstar. It denied as res judicata Danstar's claim that Knight was an independent contractor, not an employee. It also dismissed Danstar's proposal that as a subcontractor, as opposed to a general contractor, it was not responsible for complying with specific safety requirements. The staff hearing officer concluded, "The issue is not who has the primary responsibility or authority, but rather, whether the employer in question had authority." Finding that Danstar had the power to order the installation of any necessary safety devices on site, the staff hearing officer found that Danstar was subject to the code's requirements.

{¶ 7} Finally, the staff hearing officer rejected Danstar's claim that Knight was unilaterally negligent so as to exempt it from liability. Danstar had secured affidavits from two coworkers who testified that shortly before his fall, Knight had smoked marijuana. An investigator for the Bureau of Workers' Compensation was unsuccessful in attempting to contact these workers by telephone, however. Danstar also presented a report from Alfred E. Staubus, Pharm.D., Ph.D. Dr. Staubus never examined Knight's body, nor did he have any medical evidence confirming the presence of cannabinoids in Knight's system. His opinion, therefore, was limited to explaining how the effects of marijuana could have caused the fall.

{¶ 8} The staff hearing officer found no merit to Danstar's claim of unilateral negligence by Knight, since the defense applies only if the employer first complies with the applicable specific safety requirement and an employee then acts to undo the employer's compliance. Because Danstar had not initially complied, the staff hearing officer found that allegations about Knight's actions— even if true—did not bar an award for a VSSR.

{¶ 9} Danstar was assessed a penalty for a VSSR. After rehearing was denied, Danstar petitioned the Court of Appeals for Franklin County for a writ of mandamus ordering the commission to vacate its order and deny the award. The court of appeals confirmed the commission's order in full and denied the writ. This cause is now before this court on an appeal as of right.

{¶ 10} Two of Danstar's four propositions center on Knight's alleged marijuana use. The commission found the allegations irrelevant from a legal perspective, and we concur in its conclusion and reasoning. Danstar initially claims that

Knight's marijuana use was the cause of his death. Even assuming arguendo that marijuana was used, Danstar's argument ignores two things. First, a witness specifically averred that Knight slipped on a patch of ice on the roof. The accident was thus not caused by a simple lack of equilibrium, as Danstar implies. Second, Knight's loss of balance—regardless of the cause—would have been ameliorated by the presence of any of the listed safety devices. The proximate cause of Knight's fatal injuries was, indeed, the lack of appropriate safety equipment.

{¶ 11} Danstar's second drug-related argument merits only scant consideration. It proposes that awarding VSSR compensation to Knight's minor children tacitly rewards marijuana use and violates public policy. But the general public policy against marijuana use expressed in the criminal code cannot override specific requirements of the workers' compensation statutes and the constitution. If compensation for death is awarded and if the commission finds that the death was the result of a VSSR, an additional award is mandatory. Section 35, Article II, Ohio Constitution.

{¶ 12} Danstar next reasserts its defense of unilateral employee negligence, claiming that Knight was negligent in failing to install slide guards. The commission's analysis of this claim was directly on the mark. Specific safety requirements exist to " 'protect employees against their own negligence and folly as well as to provide them a safe place to work.' " *State ex rel. Cotterman v. St. Marys Foundry* (1989), 46 Ohio St.3d 42, 47, 544 N.E.2d 887, quoting *State ex rel. United States Steel Corp. v. Cook* (1983), 10 Ohio App.3d 183, 186, 10 OBR 254, 461 N.E.2d 916. Therefore, "the critical issue in a VSSR claim is always whether the *employer* complied with the specific safety requirement." (Emphasis sic.) *State ex rel. Quality Tower Serv., Inc. v. Indus. Comm.* (2000), 88 Ohio St.3d 190, 193, 724 N.E.2d 778. Unilateral negligence sufficient to avoid VSSR liability can exist only if there is evidence that the employer initially satisfied the specific safety requirement and the claimant disabled or otherwise circumvented the safety apparatus. *State ex rel. Frank Brown & Sons, Inc. v. Indus. Comm.* (1988), 37 Ohio St.3d 162, 524 N.E.2d 482.

{¶ 13} Danstar asserts that in providing wood for the slide guards, it complied with the specific safety requirement. This assertion is incorrect. Slide guards are not an approved means of protection under either Ohio Adm.Code 4121:1–3–09(F)(1) or 4121:1–3–03(J)(1).

{¶ 14} In its last argument, Danstar resurrects its claim that Knight was an independent contractor. As the commission correctly found, that issue was litigated and conclusively resolved in the initial allowance of the death claim. Further, as the commission also rightly determined, *State ex rel. Newman v. Indus. Comm.* (1997), 77 Ohio St.3d 271, 673 N.E.2d 1301, and its progeny do not

compel a different result. *Newman* involved a temporary-employment agency and addressed the question of who, for VSSR purposes, was the responsible employer. Usually, the temporary-employment agency is the responsible employer for general workers' compensation purposes. For purposes of VSSR liability, however, the result can be different. In the case, for example, of a construction firm that leases temporary employees, it is the construction firm, not the temporary-employment agency, that controls the construction site and, hence, the installation and maintenance of safety equipment. *Newman* accordingly held that an injured worker could pursue a VSSR claim against the customer company of a temporary-employment agency.

{¶ 15} The present case does not involve a temporary-employment agency, nor does it involve an employer that was completely powerless over the condition of, and equipment at, the accident site. The commission did not, therefore, abuse its discretion in distinguishing *Newman*.

{¶ 16} The judgment of the court of appeals is affirmed.

Judgment affirmed.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

---

Gibson & Robbins–Penniman and J. Miles Gibson; and Isaac, Brant, Ledman & Teetor and Douglas J. Suter, for appellant.

Jim Petro, Attorney General, and Derrick L. Knapp, Assistant Attorney General, for appellee Industrial Commission.

Pencheff & Fraley Co., L.P.A., Amanda B. Brown, and Joseph A. Fraley, for appellee Lisa Knight.