[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Byington Builders, Ltd. v. Indus. Comm.*, Slip Opinion No. 2018-Ohio-5086.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-5086

THE STATE EX REL. BYINGTON BUILDERS, LIMITED, APPELLANT, *v.*
INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Byington Builders, Ltd. v. Indus. Comm.*, Slip Opinion No. 2018-Ohio-5086.]

*Workers' compensation—Violation of specific safety requirement—Industrial Commission did not abuse its discretion in granting additional award— Record contained evidence supporting commission's finding that specific safety requirement applied, that employer violated it, and that violation was proximate cause of injury—Court of appeals' judgment denying of writ of mandamus affirmed.*

(No. 2017-0690—Submitted July 31, 2018—Decided December 20, 2018.)

APPEAL from the Court of Appeals for Franklin County, No. 15AP-407,
2017-Ohio-2623.

_____

**Per Curiam.**

## I. INTRODUCTION

{¶ 1} This is a workers' compensation case in which appellee Industrial Commission awarded appellee Thomas Trousdale additional compensation for the violation of a specific safety requirement ("VSSR") by appellant, Byington Builders, Ltd. ("Byington Builders"). Byington Builders asks this court to reverse the Tenth District Court of Appeals' judgment denying its request for a writ of mandamus compelling the commission to vacate its VSSR award.

{¶ 2} Byington Builders raises two issues in this appeal: (1) whether the commission abused its discretion by finding that Byington Builders violated a specific safety requirement and (2) whether the commission abused its discretion by failing to find that the proximate cause of Trousdale's injuries was his own "unilateral negligence." We affirm the denial of the writ. Although aspects of the Tenth District's analysis were flawed, that court reached the correct result.

## II. FACTS AND PROCEDURAL HISTORY

### A. Trousdale's Employment and Injury

{¶ 3} On September 2, 2011, Trousdale fell from the pitched roof of a two-story apartment building in Sandusky, while working for Byington Builders. Trousdale was an experienced roofer and a union carpenter who had been assigned to install caps at the peak of the roof. On his way to get more caps, Trousdale stepped on some loose shingles midway down the roof, slipped, slid down the surface, went over the edge, fell 22 feet, and hit the ground, landing on his buttocks. He was transported to a hospital by ambulance.

{¶ 4} Trousdale filed a claim for workers' compensation benefits. The claim was allowed for compression fracture; lumbar compression fracture; buttock, left-hip, and left-elbow contusion; disc protrusion; stenosis; chronic compression deformities of thoracic and lumbar vertebrae; substantial aggravation of pre-

2

existing disc protrusion and of degenerative disc disease; and severe and chronic major depressive disorder.

### B. Trousdale's VSSR Claim

### 1. Application

{¶ 5} On November 8, 2012, Trousdale filed an application for an additional award for a VSSR. Trousdale claimed that Byington Builders violated specific safety requirements set forth in former Ohio Adm.Code 4121:1-3-09(E) (current Ohio Adm.Code 4123:1-3-09, regarding the installation of roofing brackets), which is not at issue in this appeal, and former Ohio Adm.Code 4121:1-3-09(F)(1) (current Ohio Adm.Code 4123:1-3-09(F)(1), regarding the installation of catch platforms or a lifeline for pitched roofs).[1]

{¶ 6} Ohio Adm.Code 4123:1-3-09(F)(1) provides, "On pitched roofs with a rise of four inches in twelve [inches] or greater, sixteen feet or more above ground, and not having a parapet of at least thirty inches in height, catch platforms shall be installed. * * * Safety belts or harnesses attached to a lifeline which is securely fastened to the structure may be used in lieu of a catch platform."

### 2. Hearing

{¶ 7} A staff hearing officer ("SHO") for the commission took evidence at a hearing that was held on November 12, 2014. At the hearing, the owner of Byington Builders, Aaron Byington ("Byington"), stipulated that the roof from which Trousdale fell had a pitch of 6 inches in 12, was 22 feet above the ground, and had no parapet. Trousdale testified that he thought the pitch was 8 inches in 12 but that he could not be certain and that "[s]ix 12, eight 12 is not very much of a difference by looking." It is therefore undisputed that the pitch was at least 6 inches in 12—i.e., that the roof gained 6 inches in height for every 12 inches in length.

---

1. Because the pertinent language of the rule has not changed, this opinion will reference the current code number.

{¶ 8} Trousdale, Byington, and Thomas Mock, Byington Builders' "lead man" on the job, all testified that on the day that Trousdale fell, no catch platforms had been installed and no safety belts, harnesses, or lifelines were being used by anyone working on the apartment roof. Byington admitted that he did not require his employees to use safety harnesses and that he was aware that no one was using safety equipment on this job. He testified, "[A] lot of times when you do have these harnesses and ropes, you trip and fall over it nonstop. And people weren't comfortable—don't get comfortable with them. I've seen more accidents with that. I've had more accidents with them on than I have without them." Both Mock and Tyson Pengob, another Byington Builders supervisor, testified that they had never instructed anyone on the job site that using safety equipment was required. The day that Trousdale fell, Mock and Pengob were both working on the roof without any safety equipment.

{¶ 9} Trousdale testified that a few days before he fell, another Byington Builders employee fell from the same roof and landed on an apartment balcony. According to Trousdale, Byington Builders made no changes in the use of safety equipment after this incident. Coworker Rodney Clift, a fellow union carpenter, also testified that an employee fell from the roof and landed on a balcony. Byington Builders presented no testimony or other evidence at the hearing disputing the fact that another employee fell from the same roof a few days before Trousdale did.

{¶ 10} The parties presented conflicting testimony about whether any safety harnesses and lifelines were available at the job site. Byington, Mock, and Pengob all testified that they had made Trousdale aware that safety harnesses and lifelines were kept in an equipment trailer that, according to Byington, was located ten feet from the building from which Trousdale fell. By contrast, Trousdale testified that he never saw the trailer or any harnesses, ropes, lanyards, or roofing brackets on the job site and that neither Byington nor any supervisor ever told him that he was

required to get safety equipment from a trailer. Clift also testified that he never saw a trailer or any safety equipment at the job site.

### 3. Order

{¶ 11} In the commission's order, mailed on November 20, 2014, the SHO denied Trousdale's VSSR application in part and granted it in part. The SHO found that Ohio Adm.Code 4123:1-3-09(F)(1) applied to the roof from which Trousdale fell, that Byington Builders had violated it, and that the violation was the proximate cause of Trousdale's injuries.

{¶ 12} The SHO resolved the factual dispute regarding the availability of the safety equipment in Byington Builders' favor but found that "[e]ven when construing the evidence in favor of the Employer, [i.e.,] that the safety equipment was on-site and that the Injured Worker knew of its availability," Byington Builders still violated the provision. Mere availability did not suffice, because "[e]ven assuming safety belts were available, [Ohio Adm.Code] 4123:1-3-09(F)(1) requires that they be 'attached to a lifeline which is securely fastened to the structure' in order to satisfy the requirement of being used 'in lieu of a catch platform.' " Accordingly, the SHO found that "the Employer has the option to either install a catch basin [sic: platform] or to fasten a lifeline to the roof so that those wishing to use a safety belt would have something to attach the safety belt to on the structure," and "[t]he employer in the instant case did not install either of those devices."

{¶ 13} The SHO awarded additional compensation in the amount of 40 percent of Trousdale's maximum weekly rate due to this VSSR, finding that the violation was serious and noting that another worker had fallen off the same roof a few days before Trousdale fell.

### 4. Motion for a Rehearing

{¶ 14} Byington Builders moved for a rehearing, arguing that Ohio Adm.Code 4123:1-3-09(F)(1) must be read in conjunction with Ohio Adm.Code 4123:1-3-03(J)(1) and that under the latter provision, which relates to personal

protective equipment, it is the responsibility of the employee, not the employer, to use a safety harness. Byington Builders argued that the proximate cause of Trousdale's injuries was his own "unilateral negligence" in failing to use the lifelines that Byington Builders claimed it had made available. It further argued that securely fastening a lifeline to the structure would have done nothing to prevent injury, because workers may have failed to use the available lifeline. A different SHO denied the motion for a rehearing, finding that Byington Builders had not submitted any new and relevant evidence nor shown that the original order was based on an obvious mistake of fact or clear mistake of law.

### C. Byington Builders' Mandamus Action

{¶ 15} In April 2015, Byington Builders filed its mandamus complaint asking the Tenth District Court of Appeals to issue a writ directing the commission to vacate its prior decisions and to enter an order denying Trousdale's request for a VSSR award. In support of its claim that the commission abused its discretion, Byington Builders again asserted that it had not violated Ohio Adm.Code 4123:1-3-09(F)(1), because that rule, when read in conjunction with Ohio Adm.Code 4123:1-3-03(J)(1), required it to do no more than make lifelines and safety harnesses available for employees and did not require Byington Builders to affix either catch platforms or lifelines to the building, as the SHO had ruled. Byington Builders also again asserted that the proximate cause of Trousdale's injuries was his own unilateral negligence in failing to use available safety harnesses. Byington Builders additionally asserted that the commission failed to strictly construe Ohio Adm.Code 4123:1-3-09(F)(1) and to resolve all reasonable doubts regarding its interpretation in favor of the employer as required by this court's caselaw.

{¶ 16} A Tenth District magistrate recommended that the court deny the writ. 2017-Ohio-2623, at ¶ 51. Taking guidance from *State ex rel. Avalotis Painting Co. v. Indus. Comm.*, 91 Ohio St.3d 137, 742 N.E.2d 1124 (2001), in which this court discussed Ohio Adm.Code 4123:1-3-03(J)(1), the magistrate

concluded that under Ohio Adm.Code 4123:1-3-09(F)(1), "logic requires the conclusion that the employer bear the responsibility of rigging the lifeline. It is not the responsibility of the worker to rig his own lifeline or to request that his employer rig a lifeline." 2017-Ohio-2623, at ¶ 47. Because it was undisputed that Byington Builders failed to install a catch platform or rig a lifeline and had therefore violated Ohio Adm.Code 4123:1-3-09(F)(1), the magistrate further concluded that "neither proximate cause nor unilateral negligence are truly issues." *Id*. at ¶ 48.

{¶ 17} Byington Builders objected to the magistrate's recommendation, reiterating its prior arguments and asserting that the facts in *Avalotis* are distinguishable from those in this case. The Tenth District overruled Byington Builders' objections and adopted the magistrate's decision as its own. Byington Builders filed a timely appeal of the Tenth District's judgment.

### III. ANALYSIS

#### A. Requirements for a VSSR Award

{¶ 18} "An award for a VSSR is 'a new, separate, and distinct award' over and above standard workers' compensation benefits. It is not covered by an employer's workers' compensation premium." *State ex rel. Precision Steel Servs., Inc. v. Indus. Comm.*, 145 Ohio St.3d 76, 2015-Ohio-4798, 47 N.E.3d 109, ¶ 15, quoting *State ex rel. Newman v. Indus. Comm.*, 77 Ohio St.3d 271, 272, 673 N.E.2d 1301 (1997). "To be entitled to an additional award for a VSSR, a claimant must show that (1) a specific safety requirement applied, (2) the employer violated that requirement, and (3) the employer's violation caused the injury." *Id*.

#### B. Requirements for a Writ of Mandamus

{¶ 19} To prevail on its claim for mandamus relief, Byington Builders must "demonstrate that the commission's decision to issue a VSSR award was an abuse of discretion. So long as some evidence supports the commission's order, there was no abuse of discretion, and the court must uphold the decision." *State ex rel. Armstrong Steel Erectors, Inc. v. Indus. Comm.*, 144 Ohio St.3d 243, 2015-Ohio-

4525, 41 N.E.3d 1233, ¶ 13. "The interpretation of a specific safety requirement is within the final jurisdiction of the commission and may be corrected in mandamus only upon a showing that the commission abused its discretion." *Precision Steel* at ¶ 21. "[B]ecause a VSSR award is a penalty imposed on an employer, specific safety requirements must be strictly construed and all reasonable doubts concerning the interpretation of a particular safety regulation must be resolved in favor of the employer." *Id*.

### C. *The Industrial Commission Did Not Abuse Its Discretion*

#### 1. **The Specific Safety Requirement Applied**

{¶ 20} Chapter 4123:1-3 of the Ohio Administrative Code applies to the construction and repair of buildings. Ohio Adm.Code 4123:1-3-01(A). And Ohio Adm.Code 4123:1-3-09(F)(1) applies to work performed on "pitched roofs with a rise of four inches in twelve or greater, sixteen feet or more above ground, and not having a parapet of at least thirty inches in height." It is undisputed that when Trousdale fell, he was engaged in construction activity: the installation of roof caps. It is likewise undisputed that the roof from which Trousdale fell had a pitch of at least 6 inches in 12 (which is greater than 4 inches in 12), was 22 feet above the ground, and had no parapet. The rule therefore applied to the job site at which Trousdale was injured. *Accord State ex rel. R. Bauer & Sons Roofing & Siding, Inc. v. Indus. Comm.*, 84 Ohio St.3d 62, 69, 701 N.E.2d 995 (1998) ("Ohio Adm.Code 4121:1-3-09 operates to protect any construction employee who works with pitched roofs, flat roofs, or any other roofing device mentioned in the rule, and who is injured due to an employer's failure to comply with the duties imposed").

#### 2. **Byington Builders Violated the Specific Safety Requirement**

##### a. *The Requirements of Ohio Adm.Code 4123:1-3-09(F)(1)*

{¶ 21} This case hinges on what Ohio Adm.Code 4123:1-3-09(F)(1) required of Byington Builders. The commission and the Tenth District concluded that it required Byington Builders to install either catch platforms or lifelines.

Byington Builders argues that Ohio Adm.Code 4123:1-3-09(F)(1) must be read in conjunction with Ohio Adm.Code 4123:1-3-03(J)(1) and that read together, these sections required Byington Builders to merely make lifelines and safety harnesses available to employees. The Tenth District relied on *Avalotis*—a case that turned on the construction of Ohio Adm.Code 4123:1-3-03(J)(1) and that did not involve the application or interpretation of Ohio Adm.Code 4123:1-3-09(F)(1)—to hold that it was the employer's responsibility to install lifelines, not merely make them available.

      i.   The plain text of Ohio Adm.Code 4123:1-3-09(F)(1) resolves the issue

**{¶ 22}** Ohio Adm.Code 4123:1-3-09(F)(1) states: "On pitched roofs with a rise of four inches in twelve or greater, sixteen feet or more above ground, and not having a parapet of at least thirty inches in height, catch platforms *shall* be installed. * * * Safety belts or harnesses attached to a lifeline which is securely fastened to the structure may be *used* in lieu of a catch platform." (Emphasis added.) The first sentence of this rule clearly requires employers whose employees are engaging in construction activity on qualifying roofs to install catch platforms. *See* Ohio Adm.Code 4123:1-3-01(B)(25) (" 'Shall' shall be considered mandatory"); *see also Bauer & Sons*, 84 Ohio St.3d at 69. The last sentence of the rule provides that "in lieu of" the required catch platform, safety belts or harnesses that are attached to a lifeline that is securely fastened to the structure may be *used*. Said another way, if "[s]afety belts or harnesses attached to a lifeline which is securely fastened to the structure" are not used, catch platforms shall be installed. *See State ex rel. Danstar Builders, Inc. v. Indus. Comm.*, 108 Ohio St.3d 315, 2006-Ohio-1060, 843 N.E.2d 761, ¶ 4 (the rule provides that "pitched roofs require a catch platform unless safety belts and lifelines are used"). Ohio Adm.Code 4123:1-3-09(F)(1) therefore required Byington Builders to install catch platforms if safety harnesses attached to securely fastened lifelines were not used.

**{¶ 23}** Because Byington Builders admits that it did not install catch platforms, the question becomes whether safety harnesses attached to securely fastened lifelines were used. This depends on what "used" means. "Use" is not a defined term in the applicable division of the Ohio Administrative Code, so this court must afford the word its common meaning. *State ex rel. Parks v. Indus. Comm.*, 85 Ohio St.3d 22, 25, 706 N.E.2d 774 (1999) (" 'The [commission's] rules for specific safety requirements have the effect of legislative enactments' and therefore are 'subject to the ordinary rules of statutory construction' " [brackets sic]), quoting *State ex rel. Miller Plumbing Co. v. Indus. Comm.*, 149 Ohio St. 493, 496-497, 79 N.E.2d 553 (1948); R.C. 1.42 ("[w]ords and phrases shall be * * * construed according to * * * common usage").

**{¶ 24}** The dictionary definition of "use" is "to put into action or service * * * EMPLOY." *Webster's Third New International Dictionary* 2523 (2002). Byington Builders would have "use" mean "make available." But the safety-and-hygiene rules already have a word with that definition: " 'Provide' means to make available," Ohio Adm.Code 4123:1-3-01(B)(21). If the drafters of the code had intended Ohio Adm.Code 4123:1-3-09(F)(1) to require employers to install catch platforms unless safety belts, harnesses, and lifelines were merely *made available*, they would have employed the word to which they had given that definition. *See, e.g.*, Ohio Adm.Code 4123:1-3-04(D)(1), (2), and (3), 4123:1-3-10(R)(6), 4123:1-3-10(V)(3), and 4123:1-3-10(Y)(7). Indeed, Ohio Adm.Code 4123:1-3-18(H)(2)(b) says, "When entering a toxic or flammable atmosphere, an employee shall be *provided* with and *use* an adequate, attended, lifeline." (Emphasis added.) The code drafters' employment of both "use" and "provide" in that rule bolsters our conclusion that "use" does not mean the same thing as "provide."

**{¶ 25}** Because the applicable rule employs the word "used" rather than the word "provided," Byington Builders was required to install catch platforms if safety

belts or harnesses attached to lifelines that were securely fastened to the structure were not used—i.e., put into action or service.

ii. The plain meaning of the rule is consistent with the commission's interpretation, which is not "patently illogical"

{¶ 26} This court is "normally obligated to defer to the commission's interpretation of its own rules," *State ex rel. Lamp v. J.A. Croson Co.*, 75 Ohio St.3d 77, 79-80, 661 N.E.2d 724 (1996), and this straightforward reading of the text of Ohio Adm.Code 4123:1-3-09(F)(1) is consistent with the SHO's interpretation of the rule's requirements. The SHO stated, "Even assuming safety belts were available, [Ohio Adm.Code] 4123:1-3-09(F)(1) requires that they *be 'attached* to a lifeline which is securely fastened to the structure' *in order to satisfy the requirement of being used* 'in lieu of a catch platform.' " (Emphasis added.)

{¶ 27} While "[t]he commission has the discretion to interpret its own rules * * *, where the application of those rules to a unique factual situation gives rise to a patently illogical result, common sense should prevail." *State ex rel. Harris v. Indus. Comm.*, 12 Ohio St.3d 152, 153, 465 N.E.2d 1286 (1984), *abrogated on other grounds*, *State ex rel. AK Steel Corp. v. Davis*, 123 Ohio St.3d 458, 2009-Ohio-5865, 917 N.E.2d 797. Citing this principle, Byington Builders argues that it is illogical to require an employer to install lifelines that an employee might choose not to use.

{¶ 28} However, we are not convinced that Byington Builders' situation is unique or that the application of Ohio Adm.Code 4123:1-3-09(F)(1) to that situation would be illogical. While Trousdale's fall was surely of unique importance to him, Byington Builders has identified—and the record discloses—nothing about this particular roofing job or this particular accident that was unique in a way that should abrogate the application of a specific safety requirement. And, Byington Builders' argument that it is illogical to require employers to install lifelines that might go unused would make sense only if this court agreed with

Byington Builders' flawed reading of Ohio Adm.Code 4123:1-3-09(F)(1). Byington Builders has not explained how it is illogical to apply the straightforward requirements of this rule regarding roofing devices to this straightforward roofing job.

iii. Ohio Adm.Code 4123:1-3-03(J)(1) does not alter the requirements of Ohio Adm.Code 4123:1-3-09(F)(1)

{¶ 29} Byington Builders' primary argument is that Ohio Adm.Code 4123:1-3-09(F)(1) must be read in conjunction with Ohio Adm.Code 4123:1-3-03(J)(1), and that the latter rule permitted Byington Builders to comply with the former rule by making safety harnesses and lifelines available for employees to use. Byington Builders is incorrect.

{¶ 30} Ohio Adm.Code 4123:1-3-03(J)(1) states:

Lifelines, safety belts or harnesses and lanyards shall be provided by the employer, and it shall be the responsibility of the employee to wear such equipment when exposed to hazards of falling where the operation being performed is *more than six feet above* ground or above a floor or platform, *except as otherwise specified in this chapter*, and when required to work on stored material in silos, hoppers, tanks, and similar storage areas. Lifelines and safety belts or harnesses shall be securely fastened to the structure and shall sustain a static load of no less than three thousand pounds.

(Emphasis added.) This is a general rule relating to personal protective equipment. By contrast, Ohio Adm.Code 4123:1-3-09(F)(1) is a more specific rule relating to work performed on pitched roofs that are at least 16 feet above the ground.

{¶ 31} R.C. 1.51 states:

12

If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail.

**{¶ 32}** Here, it is possible to give effect to both Ohio Adm.Code 4123:1-3-03(J)(1) and 4123:1-3-09(F)(1). The two rules have different (though sometimes overlapping) scopes and are not in conflict. Ohio Adm.Code 4123:1-3-03(J)(1) applies to operations being performed more than six feet above the ground or above a floor or platform—whether on a roof or in any other workspace. In such cases, the employer is required to "provide"—i.e., make available—lifelines, safety belts or harnesses, and lanyards, and it is the "responsibility of the employee to wear such equipment." *Id.* The rule expressly applies "except as otherwise specified in this chapter." *Id.*

**{¶ 33}** Ohio Adm.Code 4123:1-3-09(F)(1) otherwise specifies. It applies a more stringent requirement to operations being performed on pitched roofs that are more than 16 feet above the ground. In those cases, the employer is required to install catch platforms unless "safety belts or harnesses attached to a lifeline which is securely fastened to the structure" are "used," *id.*, i.e., put into action or service. The general requirements in Ohio Adm.Code 4123:1-3-03(J)(1) do not alter anything in this more specific requirement. And even if the two rules did conflict, under R.C. 1.51, the more specific provision would prevail.

**{¶ 34}** For these reasons, the Tenth District's focus on *Avalotis*, 91 Ohio St.3d 137, 742 N.E.2d 1124—and Byington Builders' attempts to distinguish it—are misplaced. In *Avalotis*, a painter stood on a narrow I-beam, without a lifeline,

in order to paint the beam above. He lost his balance and fell four stories. This court considered the only rule at issue—the predecessor to Ohio Adm.Code 4123:1-3-03(J)(1)—and determined that it required the employer, not the employee, to rig a lifeline when that rule required one to be provided, because the rule made the employee responsible only for equipment that was worn (i.e., safety harnesses but not lifelines) and because a lifeline was "useless if it [wa]s not in place for the employee to tie off." *Avalotis*, 91 Ohio St.3d at 139, 742 N.E.2d 1124. While it is instructive that even under the less-stringent requirements of Ohio Adm.Code 4123:1-3-03(J)(1), this court faulted the employer for failing to rig a lifeline, that decision does not control the outcome of this case, which hinges on the application of a different, more specific rule.

### b. *Byington Builders Violated Ohio Adm.Code 4123:1-3-09(F)(1)*

{¶ 35} It is undisputed that (1) Byington Builders required Trousdale to work on a roof with a pitch greater than four inches in twelve, that was more than 16 feet from the ground, and that had no parapet, (2) Byington Builders did not install catch platforms, and (3) safety belts or harnesses attached to a lifeline that was securely fastened to the structure were not used. Byington Builders therefore violated Ohio Adm.Code 4123:1-3-09(F)(1). *Accord Danstar Builders*, 108 Ohio St.3d 315, 2006-Ohio-1060, 843 N.E.2d 761, at ¶ 4, 9, 16.

### 3. Byington Builders' Violation Proximately Caused Trousdale's Injuries

### a. *Evidence Supports The Commission's Finding of Probable Cause*

{¶ 36} The commission did not abuse its discretion by finding that Byington Builders' compliance with Ohio Adm.Code 4123:1-3-09(F)(1) "would have prevented the fall from the roof." Evidence in the record indicates that Trousdale slipped while walking on the roof, slid down its surface, and went over the edge. His fall to the ground caused his injuries. Had catch platforms been installed or had safety harnesses attached to a lifeline securely fastened to the roof been used, Trousdale's fall would have been arrested.

14

*b. The "Unilateral Negligence" Defense Is Inapplicable*

**{¶ 37}** Byington Builders argues that the proximate cause of Trousdale's injuries was his own "unilateral negligence in failing to utilize the available safety equipment" and that under *State ex rel. Frank Brown & Sons, Inc. v. Indus. Comm.*, 37 Ohio St.3d 162, 524 N.E.2d 482 (1988), Trousdale's negligence precludes his receipt of a VSSR award.

i. Byington Builders' VSSR bars its assertion of unilateral negligence

**{¶ 38}** In *Frank Brown & Sons*, this court held that an injured worker's "unilateral negligence in removing the top cross brace" from a scaffold "without first installing a corresponding cross brace beneath, contrary to instructions" precluded his receipt of a VSSR award. *Id*. at 164. In its analysis, this court recounted the facts of *State ex rel. Lewis v. Indus. Comm.*, Franklin App. No. 83AP-756, 1984 WL 4703 (Mar. 15, 1984), in which the injured worker had "voluntarily switched off a punch press safety device despite specific rules to the contrary," leading to his injury. *Frank Brown & Sons* at 164. The court of appeals had "denied the writ seeking a VSSR award, finding that the employer had fully complied with the applicable safety regulations and the claimant's unilateral act violated the safety requirement." *Id*. The court of appeals in *Frank Brown & Sons* then concluded, "Here, too, the scaffold was properly assembled and in compliance with the applicable safety requirement until appellee's removal of the cross brace." *Id*.

**{¶ 39}** These cases illustrate the rule that dispatches Byington Builders' unilateral-negligence argument—i.e., that this defense "is available *only if the employer first complies with the applicable safety requirement*." (Emphasis added.) *State ex rel. Glunt Industries, Inc. v. Indus. Comm.*, 132 Ohio St.3d 78, 2012-Ohio-2125, 969 N.E.2d 252, ¶ 16 (despite injured worker's statement that he did not need any safety equipment to perform the task he was set to complete, employer could not take advantage of unilateral-negligence defense since it did not satisfy VSSR requiring it to provide electrical-safety equipment).

**{¶ 40}** As this court has explained, "the defense is not actually about an employee's *negligence*. The employer instead avoids VSSR liability when '[the] employee unilaterally *violates* a safety requirement,' " (emphasis sic) *State ex rel. Quality Tower Serv., Inc. v. Indus. Comm.*, 88 Ohio St.3d 190, 193, 724 N.E.2d 778 (2000) (granting writ to vacate VSSR award where employee used his own ultra-light straps to rig a support structure in contravention of direct instructions from employer to use employer-provided straps that complied with the safety requirement), quoting *State ex rel. Cotterman v. St. Marys Foundry*, 46 Ohio St.3d 42, 554 N.E.2d 887 (1989). "[A]n employee's negligence in failing to protect himself from injury due to an employer's VSSR will never bar recovery," *id.*, because specific safety requirements are " 'intended to protect employees against their own negligence and folly as well as to provide them a safe place to work,' " *Cotterman* at 47 (granting writ to vacate commission's order denying VSSR award, despite employer's argument that decedent was supervisor responsible for selecting chains to suspend the load that fell on him), quoting *State ex rel. U.S. Steel Corp. v. Cook*, 10 Ohio App.3d 183, 186, 461 N.E.2d 916 (10th Dist.1983).

**{¶ 41}** Because Byington Builders failed to comply with Ohio Adm.Code 4123:1-3-09(F)(1), it cannot employ the defense that Trousdale was unilaterally negligent.

### ii. Trousdale was not unilaterally negligent

**{¶ 42}** Moreover, even if the applicable rule had required Byington Builders to do no more than make safety equipment available to Trousdale and Byington Builders had done so, this case does not fit the mold of those that have allowed employers to avoid a VSSR award due to the injured worker's unilateral negligence. This is not a case in which a rogue employee disregarded direct instructions to use certain safety equipment, or disabled an employer-provided safety device. *Compare Frank Brown & Sons*, 37 Ohio St.3d 162, 524 N.E.2d 482; *Lewis*, Franklin App. No. 83AP-756, 1984 WL 4703; *Quality Tower Serv.* To the

contrary, Byington Builders' owner and supervisors never instructed any employees to use safety equipment and *no* employees—including the two supervisors—were using any safety equipment on this job, with the approval of the owner.

**{¶ 43}** Accordingly, Trousdale's failure to use safety equipment was hardly unilateral, and Byington Builders' claim that Trousdale was negligent makes little sense. Byington Builders casts the decision to leave safety equipment in the equipment trailer on this particular job as the educated decision of experienced roofers. In light of this position, Byington Builders' argument that Trousdale was negligent implies that its entire crew, including its supervisors and owner, were also acting negligently.

**{¶ 44}** Had Byington Builders required its crew to use safety harnesses attached to lifelines that were securely attached to the structure and had Trousdale alone, unbeknownst to Byington Builders, failed to heed that instruction, we would likely view this case differently. As it is, because Byington Builders failed to comply with the applicable specific safety requirement and because Trousdale's actions did not constitute "unilateral negligence," the defense is inapplicable.

### IV. CONCLUSION

**{¶ 45}** For the reasons above, the commission did not abuse its discretion in granting Trousdale a VSSR award, and the Tenth District correctly denied Byington Builders' request for a writ of mandamus. We affirm the Tenth District's judgment.

Judgment affirmed.

O'CONNOR, C.J., and O'DONNELL, FISCHER, and DEGENARO, JJ., concur.

FRENCH and DEWINE, JJ., concur in judgment only.

KENNEDY, J., dissents, with an opinion.

_____

**KENNEDY, J., dissenting.**

{¶ 46} Because the plain language of Ohio Adm.Code 4123:1-3-09(F)(1) does not require an employer to fasten lifelines for its roofers, appellee Industrial Commission abused its discretion in awarding appellee Thomas Trousdale additional compensation based on the finding that appellant, Byington Builders, Ltd. ("Byington Builders"), violated a specific safety requirement ("VSSR"). Accordingly, I dissent and would reverse the judgment of the Tenth District Court of Appeals denying a writ of mandamus to compel the commission to vacate its award.

{¶ 47} While working as a roofer for Byington Builders, Trousdale fell from a roof and sustained injuries. He was awarded workers' compensation benefits and then sought an additional award for a violation of Ohio Adm.Code 4123:1-3-09(F)(1), which provides: "On pitched roofs with a rise of four inches in twelve [inches] or greater, sixteen feet or more above ground, and not having a parapet of at least thirty inches in height, catch platforms shall be installed. * * * Safety belts or harnesses attached to a lifeline which is securely fastened to the structure may be used in lieu of a catch platform." After a hearing, the commission determined that Byington Builders had violated this requirement by failing to install a catch platform or fasten a lifeline to the roof that its roofers could use with a safety belt, and it awarded Trousdale additional compensation as a penalty for the violation.

{¶ 48} Byington Builders filed this mandamus action in the Tenth District Court of Appeals, seeking to vacate the VSSR award. The Tenth District denied the writ, and a majority of this court affirms, holding that Ohio Adm.Code 4123:1-3-09(F)(1) required Byington Builders to "use" safety belts securely fastened to lifelines if it did not install catch platforms and that making the equipment available did not satisfy this requirement.

**{¶ 49}** The majority's analysis in affirming the court of appeals disregards the standard of review, which requires the court to strictly construe specific safety requirements and to resolve all doubts concerning the meaning and applicability of a particular requirement in favor of the employer. *State ex rel. 31, Inc. v. Indus. Comm.*, 152 Ohio St.3d 350, 2017-Ohio-9112, 96 N.E.3d 246, ¶ 21, citing *State ex rel. Burton v. Indus. Comm*., 46 Ohio St.3d 170, 172, 545 N.E.2d 1216 (1989). A VSSR award is a penalty imposed on an employer, *id*., and we have explained that specific safety requirements must establish " 'specific and definite requirements or standards of conduct * * * [that] are of a character plainly to apprise an employer of his legal obligation toward his employees,' " (alterations in *Precision Steel*) *State ex rel. Precision Steel Servs., Inc. v. Indus. Comm.*, 145 Ohio St.3d 76, 2015-Ohio-4798, 47 N.E.3d 109, ¶ 17, quoting *State ex rel. Trydle v. Indus. Comm.*, 32 Ohio St.2d 257, 291 N.E.2d 748 (1972), paragraph one of the syllabus. In other words, an employer cannot be penalized for failing to comply with a safety requirement unless "mandatory specific duties are apparent to an employer interpreting [the] provision." *State ex rel. Oliver v. Southeastern Erectors, Inc.*, 76 Ohio St.3d 26, 28, 665 N.E.2d 1108 (1996).

**{¶ 50}** Ohio Adm.Code 4123:1-3-09(F)(1) does not specify whether it is the employer or the roofer who must fasten the lifeline—it only states that "a lifeline which is securely fastened to the structure may be used in lieu of a catch platform." Because the rule is phrased in the passive voice, it is not possible to say that it is apparent to an employer interpreting Ohio Adm.Code 4123:1-3-09(F)(1) that it has a mandatory specific duty to fasten the lifeline. Construing this provision strictly and in favor of the employer precludes a holding that Ohio Adm.Code 4123:1-3-09(F)(1) requires the employer to fasten the lifeline to the structure.

**{¶ 51}** Nonetheless, the majority's analysis focuses on the word "use," explaining that "[t]he dictionary definition of 'use' is 'to put into action or service * * * EMPLOY.' " (Ellipsis and capitalization sic.) Majority opinion at ¶ 24, quoting

*Webster's Third New International Dictionary* 2523 (2002). It reasons that because Ohio Adm.Code 4123:1-3-09(F)(1) contains the word "use," it required Byington Builders to do more than "provide" or "make available" lifelines and safety harnesses and belts. But the majority fails to explain why lifelines and safety belts and harnesses can only be used if the employer first fastens the lifeline to the structure. Lifelines and safety belts and harnesses are used if the employer supplies that equipment and the employee is then responsible for fastening the lifeline to the structure and tying onto it with a safety belt or harness. Ohio Adm.Code 4123:1-3-09(F)(1) is broad enough to encompass both uses of the equipment, and it is at best ambiguous and therefore does not impose "mandatory specific duties" that are "apparent to an employer interpreting [the] provision." *Oliver*, 76 Ohio St.3d at 28, 665 N.E.2d 1108.

{¶ 52} Another rule, Ohio Adm.Code 4123:1-3-03(J)(1), however, resolves any ambiguity by providing that "[l]ifelines, safety belts or harnesses and lanyards shall be provided by the employer, and it shall be the responsibility of the employee to wear such equipment when exposed to hazards of falling where the operation being performed is more than six feet above ground or above a floor or platform, except as otherwise specified in this chapter * * *." It is true, as the majority points out, that Ohio Adm.Code 4123:1-3-09(F)(1) makes special provisions for roofs, but that is because Ohio Adm.Code 4123:1-3-03(J)(1) does not specifically apply to work performed on a platform such as a pitched roof. Ohio Adm.Code 4123:1-3-09(F)(1) therefore supplements that rule and specifies that on certain pitched roofs, either catch platforms or lifelines and safety belts or harnesses must be used. But nothing in the roof-specific rule conflicts with the more general provision that it is the employer's responsibility to supply and the employee's responsibility to wear this safety equipment. The majority fails to explain why these administrative rules would have separate requirements for the same type of fall hazard. But reading these two provisions in harmony makes sense, because the employer is in the best

position to provide a lifeline and harness or safety belt for its employees and a roofer is in the best position to fasten and use the equipment, moving the lifeline as he or she completes work on the roof. Taking the commission's reasoning to its logical conclusion will mean that an employer must remain on the jobsite at all times in order to fasten and refasten the lifeline as work is completed, because the employee has no obligation to do it him or herself. And any time the employer fails to move the lifeline or permits a roofer to do it, the employer could be subject to a new VSSR penalty if an accident follows. Such a result is palpably unreasonable.

{¶ 53} The majority's attempt to buttress its analysis as being consistent with the commission's interpretation of Ohio Adm.Code 4123:1-3-09(F)(1) bears little fruit. The commission's factual determination that a worker's injury resulted because of a violation of a specific safety requirement is final pursuant to Article II, Section 35 of the Ohio Constitution, but its interpretation of an administrative rule is not, because the commission cannot rewrite administrative rules in the guise of interpreting them. "Only the Administrator of Workers' Compensation or the General Assembly may rewrite safety requirements." *State ex rel. Lamp v. J.A. Croson Co.*, 75 Ohio St.3d 77, 80, 661 N.E.2d 724 (1996), citing R.C. 4121.13 and 4121.47. And more fundamentally, this court should not abdicate its judicial authority and responsibility to "say what the law is," *Marbury v. Madison*, 5 U.S. 137, 177, 1 Cranch 137, 2 L.Ed. 60 (1803), by deferring to the commission's resolution of a question of law.

{¶ 54} Ohio Adm.Code 4123:1-3-09(F)(1) does not contain a specific and definite requirement that plainly apprises employers of a legal obligation to fasten lifelines to the structure where its employees are working on pitched roofs, and we ought not defer to an interpretation of that rule adding language to it. And absent sufficient notice to an employer that a specific safety requirement applies, a VSSR penalty cannot be imposed.

**{¶ 55}** Accordingly, I would reverse the judgment of the court of appeals and issue a writ of mandamus compelling the commission to vacate the VSSR award against Byington Builders.

_____

Christopher S. Clark, for appellant.

Michael DeWine, Attorney General, and Patsy A. Thomas, Assistant Attorney General, for appellee Industrial Commission.

Kademenos, Wisehart, Hines, Dolyk & Zeiher Co., L.P.A., and Janet L. Phillips, for appellee Thomas Trousdale.

_____